IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| MISSION COAL WIND DOWN CO., LLC, <br><br> Plaintiff, <br><br> vs. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, <br><br> Defendants. | Civil Action No.: 2:20-cv-00302 |

## COMPLAINT

Plaintiff Mission Coal Wind Down Co., LLC ("Mission Coal"), for its complaint against Defendants National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") and American Guarantee and Liability Insurance Company ("AGLIC"), states the following:

1. This is an insurance coverage action brought by Mission Coal against two insurance carriers, National Union and AGLIC. The defendant carriers, in derogation of their contractual, statutory, and common law duties, have wrongfully denied Mission Coal's claims for coverage by asserting improper constructions of their insurance policies. Moreover, the defendants have breached their duties of good faith and fair dealing. As a consequence of defendants' breaches, Mission Coal was left to defend itself against claims without the benefit of the insurance protection to which it is entitled.

2. This action arises out of disputes relating to two insurance policies issued by defendants providing coverage to Mission Coal (the "Policies") for liability arising out of

1

flooding of a mine owned by Bluestone Coal Corporation ("Bluestone Coal") that was first discovered in March 2015 in Wyoming County, West Virginia (the "Flooding Claims"). National Union and AGLIC either have expressly denied coverage, disputed their coverage obligations, or otherwise failed to acknowledge their obligations in response to Mission Coal's tender of such claims for defense and indemnification, thereby necessitating this action.

3. Mission Coal seeks damages against the defendants for breach of contract regarding the duties to defend and indemnify and bad faith under the West Virginia Unfair Trade Practices Act, W. Va. Code 33-11-1, et seq. ("WVUTPA").

4. Additionally, Mission Coal seeks declarations of the rights, duties, and liabilities of National Union and AGLIC under the Policies with respect to settled underlying claims against Mission Coal arising from the Flooding Claims and the subsequent *Bluestone* Action.

## PARTIES

5. Plaintiff Mission Coal is and at all times pertinent was a Delaware limited liability company with its principal place of business in 35 West State of Franklin Road, Suite 5, PMB 281 Johnson City, TN 37604.

6. Defendant National Union is and at all times pertinent was an insurance company incorporated under the laws of the State of Pennsylvania with its principal place of business in New York, New York. Upon information and belief, at all relevant times National Union was and is licensed and duly authorized to conduct and transact business in the State of West Virginia.

7. Defendant AGLIC is and at all times pertinent was an insurance company incorporated under the laws of the State of New York with its principal place of business in Schaumburg, Illinois. Upon information and belief, at all relevant times AGLIC was and is

2

licensed and duly authorized to conduct and transact business in the State of West Virginia.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. This action is between citizens of different states and the amount in controversy exceeds the $75,000 jurisdictional minimum.

9. This Court has personal jurisdiction over National Union and AGLIC because each transact business and contract to insure risks located with the State of West Virginia. National Union and AGLIC have purportedly availed themselves of West Virginia insurance market and the protections of West Virginia laws.

10. Venue is proper in this Court pursuant to 12 U.S.C. § 1391. A substantial part of the events giving rise to this action occurred in West Virginia, and National Union and AGLIC carry on regular business of selling insurance policies in West Virginia, selling insurance policies to residents of West Virginia, and adjusting insurance claims in West Virginia.

## ACTUAL CONTROVERSY

11. This Court has authority to grant declaratory judgment pursuant to 28 U.S.C. § 2201 because Mission Coal, National Union and AGLIC are engaged in an actual controversy susceptible to specific relief over the meaning of provisions in the Policies. This controversy is within the jurisdiction of this Court.

## FACTUAL BACKGROUND

### A.  *The Bluestone Action*

12. Bluestone Coal operated an underground coal mining operation at Mine No. 65 located in Wyoming County, West Virginia where it recovered coal from the Little Fire Creek coal seam.

13. Pinnacle Mining Company, LLC ("Pinnacle") operated an underground coal mining operation several hundred feet below the level of Bluestone's Mine No. 65.

14. Target Drilling, Inc. ("Target") performed services related to mining and oil and gas extraction industries, including such services for Cliffs, Seneca, Pinnacle, and others.

15. Seneca Coal Resources, LLC ("Seneca") was Pinnacle's parent company and participated in providing bonding, other financial resources and regulatory guarantees for Pinnacle's operations. Seneca was engaged in a joint venture with Pinnacle and others relating to Pinnacle's coal operations, including operations that were the subject of the *Bluestone* Action.

16. Seneca North American Coal, LLC ("SNAC") was previously known as Cliffs Natural Resources, Inc. ("Cliffs") and before December 22, 2015, was the parent company and owner of Cliffs North American Coal, LLC ("CNAC"), which in turn was the owner of Pinnacle. Cliffs provided or had a duty to providing bonding, secure insurance, fund pensions, and/or other financial resources and regulatory guarantees for Pinnacle's operations. Cliffs, in combination with Seneca, was engaged in a business venture with Pinnacle relating to its coal operations, including operations that were the subject of the *Bluestone* Action.

17. In early 2013, Cliffs and Pinnacle contacted Bluestone seeking permission to drill a vertical borehole shaft from the surface through a void (or inactive) area of Mine No. 65 located in a sealed-off portion of the mine. The borehole shaft was to be used for the purpose of installing a vertical dewatering system to enable Cliffs and Pinnacle to control water in the Pocahontas mining seam located approximately 420 feet below Mine No. 65. Bluestone gave Cliffs and Pinnacle permission to proceed with the penetration of its mine.

18. The drilling activities were undertaken by Cliffs and Pinnacle, as well as Target, which was the principal drilling contractor on the project. Target, under the supervision and

approval of Cliffs and Pinnacle, drilled the borehole such that it penetrated through an inactive portion of Mine No. 65. Target, Cliffs, Pinnacle, and others attempted to install casing into the borehole. During the course of drilling the borehole, they became aware that the drilling of the borehole had penetrated through one or more underground aquifers or water sources.

19. In March 2015, Bluestone became aware of an increase in the amount of water behind the sealed areas of Mine No. 65, both in the section in which the borehole had penetrated and in an adjacent sealed section at a lower elevation. As a result of the increase in the pressure of the water behind the barrier seals, the water began to bypass the existing barriers and seals, permanently damaging the integrity of the seals and the surrounding strata such that they could no longer prevent the flow of water. Mining operations in Mine No. 65 had to be terminated by Bluestone due to the uncontrollable flooding.

20. On December 22, 2015, Mission Coal Company, LLC entered into an agreement with Cliffs, Seneca, and other related entities whereby Mission Coal Company, LLC assumed all liabilities in return for the assets, including mine operations, of Cliffs, Seneca, and other related entities.

21. On July 7, 2016, Bluestone filed a civil action against Pinnacle and Target for the damages arising out of the flooding and ultimate closure of Mine No. 65 in United States District Court, Southern District of West Virginia, Charleston Division, Case No. 2:16-cv-06098 (the "*Bluestone* Action"). On March 23, 2017, Bluestone amended its complaint in the *Bluestone* Action to include claims against Seneca, SNAC, and Cliffs, among others.

22. On October 3, 2018, the *Bluestone* Action was resolved by settlement.

23. On October 14, 2018, Mission Coal Company, LLC filed for Chapter 11 bankruptcy in United States Bankruptcy Court, Northern District of Alabama, Case No. 18-

04177-11. The debtor in possession for Mission Coal Company, LLC in the bankruptcy is Mission Coal.

24. National Union provided Cliffs with a commercial general liability insurance policy evidencing that it maintained liability insurance under National Union Policy Number 190-31-41 (the "National Union Policy"). The National Union Policy provided Cliffs with commercial general liability insurance coverage for the period of April 15, 2013 through April 15, 2015. The National Union Policy provided Cliffs with coverage for liabilities arising out of the *Bluestone* Action and as a result of the sale and transfer of all relevant Cliffs assets to Mission Coal, in return for assuming all Cliffs liabilities, Mission Coal became the insured under the National Union policy, and National Union undertook to defend Mission Coal in the Bluestone Action accordingly and, as alleged above contributed toward the settlement of the Bluestone Action on behalf of Mission Coal, but failed to pay all outstanding defense costs.

25. AGLIC provided Target with an umbrella liability insurance policy evidencing that it maintained liability insurance under AGLIC Policy Number GLO 9226057-04 (the "AGLIC Policy"). The AGLIC Policy provided Target with umbrella liability insurance coverage for the period of June 1, 2014 through June 1, 2015. The AGLIC Policy provided Target with coverage for liabilities arising out of the *Bluestone* Action because the underlying Arch Insurance Company policy exhausted and AGLIC's coverage was thereby triggered. The AGLIC Policy provided Seneca with coverage for liabilities arising out of the *Bluestone* Action as an additional insured. As a result of Mission Coal acquiring all the assets and liabilities of Seneca, as alleged above, Mission Coal assumed the status of additional insured under the AGLIC policy for liabilities arising out of the *Bluestone* Action as an additional insured of Target. AGLIC paid sums to settle the Bluestone Action on Mission Coal's behalf, and had

assumed defense obligations for Mission Coal. However, AGLIC failed and refused to pay all the outstanding defense fees.

### B. *Defendants' Breaches and Bad Faith Claims Handling*

26. At all times relevant herein, Defendant National Union failed and refused to pay outstanding defense fees based on the false claim that Mission Coal waived the right to recover such fees, when National Union contributed to the Bluestone Action settlement. National Union stubbornly refusal to pay fees despite no evidence that Mission Coal waived defense fees, and despite the contractual and legal obligation to pay such fees. National Union failed and refused to conduct any reasonable investigation, first demanded invoices and then refused to pay them and forced the insured to sue to recover the defense fees due and owing.

27. At all times herein Defendant AGLIC failed and refused to pay outstanding defense fees based on various excuses including that very late in the Bluestone Action proceeding it engaged its own panel counsel who only monitored the lawsuit, all while reserving rights to deny coverage and in obvious conflict. AGLIC failed and refused to conduct any reasonable investigation to determine the outstanding fees due and owing. After demanding invoices and proof of the defense fees owing from their additional insured Mission Coal and receiving such proofs, AGLIC failed and refused to pay them the outstanding defense fees and forced the additional insured to sue to recover the defense fees due and owing.

## COUNT ONE
### (Declaratory Judgment)

28. Mission Coal incorporates paragraphs 1 through 27 as set forth fully herein.

29. Under the National Union Policy, Mission Coal is an insured with respect to the liability arising out of Cliff's operations.

30. Under the AGLIC Policy, Mission Coal is an additional insured with respect to

liability arising out of Target Drilling's operations.

31. The Flooding Claims took place during Cliffs' operations under the terms of the National Union Policy.

32. The Flooding Claims took place during Target Drilling's operations under the terms of the AGLIC Policy.

33. Mission Coal's alleged liability with respect to the Flooding Claims, including claims asserted in the *Bluestone* Action, arises out of Cliffs' operations and/or premises under the terms of the National Union Policy.

34. Mission Coal's alleged liability with respect to the Flooding Claims, including claims asserted in the *Bluestone* Action, arises out of Target Drilling's operations under the terms of the AGLIC Policy.

35. Mission Coal is insured under the National Union Policy with respect to the Flooding Claims, including the *Bluestone* Action admitted coverage by paying toward the settlement thereof but failed and refused to pay outstanding defense fees.

36. Mission Coal is an additional insured under the AGLIC Policy with respect to the Flooding Claims, including the *Bluestone* Action admitted coverage by paying toward the settlement thereof but failed and refused to pay outstanding defense fees.

37. Mission Coal is informed and believes and thereupon alleges that National Union disputes the contentions contained in the preceding paragraphs.

38. Mission Coal is informed and believes and thereupon alleges that AGLIC disputes the contentions contain in the preceding paragraphs.

39. An actual controversy of a justiciable nature has arisen and exists between Mission Coal, National Union and AGLIC concerning the allegations set forth in this Count One.

## COUNT TWO
### (Breach of Contract)

40. Mission Coal incorporates paragraphs 1 through 39 as set forth fully herein.

41. Mission Coal is insured under the National Union Policy with respect to the *Bluestone* Action.

42. Mission Coal is an additional insured under the AGLIC Policy with respect to the *Bluestone* Action.

43. The *Bluestone* Action sought "damages" against Mission Coal because of "property damage" arising out of an "occurrence," as those terms are defined in, or otherwise within the meaning of, the National Union Policy. National Union admitted the duty to indemnify paying toward the settlement of the Bluestone Action, but failed to pay outstanding defense fees.

44. The *Bluestone* Action sought "damages" against Mission Coal because of "property damage" arising out of an "occurrence," as those terms are defined in, or otherwise within the meaning of, the AGLIC Policy. AGLIC admitted the duty to indemnify paying toward the settlement of the Bluestone Action, but failed to pay outstanding defense fees.

45. National Union has an admitted duty to indemnify and defend Mission Coal under the National Union Policy with respect to the claims asserted against it in the *Bluestone* Action.

46. AGLIC has an admitted duty to indemnify and defend Mission Coal under the AGLIC Policy with respect to the claims asserted against it in the *Bluestone* Action.

47. National Union had timely notice under the National Union Policy of the claims against Mission Coal in the *Bluestone* Action.

48. AGLIC had timely notice under the AGLIC Policy of the claims against Mission Coal in the *Bluestone* Action.

49. Mission Coal timely sought National Union's consent, not to be unreasonably withheld, for Mission Coal's proposed reasonable settlement of liability in the *Bluestone* Action. National Union admitted coverage and contributed to the settlement, but failed to pay outstanding defense costs.

50. Mission Coal timely sought AGLIC's consent, not be unreasonably withheld, for Mission Coal's proposed reasonable settlement of liability in the *Bluestone* Action. AGLIC admitted coverage and contributed to the settlement, but failed to pay outstanding defense costs.

51. Following Mission Coal's reasonable settlement of its liability in the *Bluestone* Action, National Union's duty to defend is mature, has not been excused, and has not been discharged.

52. Following Mission Coal's reasonable settlement of its liability in the *Bluestone* Action, AGLIC's duty to defend is mature, has not been excused, and has not been discharged.

53. National Union has refused to perform its contractual duty to defend Mission Coal with respect to the *Bluestone* Action.

54. AGLIC has refused to perform its contractual duty to defend Mission Coal with respect to the *Bluestone* Action.

55. Mission Coal has discharged, or is excused from discharging, any obligation to perform conditions precedent to coverage and any covenants, the breach of which would form a partial or total defense of National Union's performance.

56. Mission Coal has discharged, or is excused from discharging, any obligation to perform conditions precedent to coverage and any covenants, the breach of which would form a partial or total defense of AGLIC's performance.

57. National Union's refusal to perform its contractual duty to defend Mission Coal is

a breach of the National Union Policy.

58. AGLIC's refusal to perform its contractual duty to defend Mission Coal is a breach of the AGLIC Policy.

59. As a direct and proximate result of National Union's breach of its contractual obligation to defend, Mission Coal has incurred damages in an amount to be determined at trial.

60. As a direct and proximate result of AGLIC's breach of its contractual obligation to defend, Mission Coal has incurred damages in amount to be determined at trial.

## COUNT THREE
### (Bad Faith in Violation of WVUTPA)

61. Mission Coal incorporates paragraphs 1 through 60 as set forth fully herein.

62. National Union violated the WVUTPA by engaging in the following activities as a general business practice:

    a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue (including, among other things, failing and refusing to acknowledge that Mission Coal was in insured under the policy; failing and refusing to acknowledge that the property damage claimed was covered or potentially covered under the policy; asserting irrelevant exclusions somehow barred coverage; refusing to pay submitted invoices, after demanding they be provided, by falsely asserting that the insureds demanded the policy be exhausted by paying part of the settlement and that somehow defense costs were waived, when National Union knew very well no defense costs were waived.

    b. Failing to acknowledge and act reasonably promptly upon communication with respect to claims arising under the National Union Policy (including, among other things failing and refusing to pay defense costs on the false grounds that Mission Coal somehow waived recovery of defense costs in asking National Union to participate in settlement of the

claims.

  c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the Policies;

  d. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

  e. Not attempting in good faith to effectuate prompt, fair, and equitable settlements of defense cost claims in which liability has become reasonably clear; and

  f. Failing to promptly provide a reasonable explanation of the basis in the National Union Policy in relation to the facts or applicable law for denial of Mission Coal's defense cost claim or for the offer of a compromise settlement.

  63. Taken as a whole, these separate, discrete violations of the WVUTPA constitute a general business practice by National Union

  64. As a direct and proximate result of National Union's UTPA violations, Mission Coal has been harmed and sustained damages, including but not limited to being compelled to expend money for attorneys' fees and costs and out-of-pocket expenses to secure the benefits owed to it by National Union.

  65. National Union engaged in conduct described in this count with conscious disregard of Mission Coal's rights and with a willful and malicious intention to injure Mission Coal's rights to receive the benefits of its contracts.

  66. Accordingly, Mission Coal also is entitled to punitive damages in an amount appropriate to punish or make an example of National Union.

  67. AGLIC violated the WVUTPA by engaging in the following activities as a general business practice:

a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue (including, among other things, misrepresenting that Mission Coal was somehow not an additional insured under the policy denying the terms and conditions part of the purchase order required the named insured Target Drilling to make Mission Coal an insured under the policy); that the Underlying Arch policy was not somehow exhausted by payment of defense costs and settlement and that the property damage at issue was somehow not covered in the policy; demanding then receiving detailed defense invoices then refusing to acknowledge that the invoices are defense costs to be paid.

b. Failing to acknowledge and act reasonably promptly upon communication with respect to claims arising under the AGLIC Policy including, among other things, failing and refusing to acknowledge coverage and paying submitted defense invoices; and falsely claiming that Mission Coal waived defense fee recovery.

c. Failing to adopt and implement reasonable standards for the prompt investigation of defense cost claims arising under the Policies;

d. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

e. Not attempting in good faith to effectuate prompt, fair, and equitable settlements of defense cost claims in which liability has become reasonably clear; and

f. Failing to promptly provide a reasonable explanation of the basis in the AGLIC Policy in relation to the facts or applicable law for denial of Mission Coal's defense costs claim or for the offer of a compromise settlement.

68. Taken as a whole, these separate, discrete violations of the WVUTPA constitute a general business practice by AGLIC.

69. As a direct and proximate result of AGLIC's UTPA violations, Mission Coal has been harmed and sustained damages, including but not limited to being compelled to expend money for attorneys' fees and costs and out-of-pocket expenses to secure the benefits owed to it by AGLIC.

70. AGLIC engaged in conduct described in this count with conscious disregard of Mission Coal's rights and with a willful and malicious intention to injure Mission Coal's rights to receive the benefits of its contracts.

71. Accordingly, Mission Coal also is entitled to punitive damages in an amount appropriate to punish or make an example of AGLIC.

## **PRAYER FOR RELIEF**

WHEREFORE, Mission Coal prays that this Court enter judgment as follows:

1. On its Count One, enter a declaratory judgment in favor of Mission Coal declaring that, under the National Union Policy, Mission Coal is an insured entitled to be paid all outstanding defense costs for defending against the liabilities arising out of the *Bluestone* Action.

2. On its Count One, enter a declaratory judgment in favor of Mission Coal declaring that, under the AGLIC Policy, Mission Coal is an additional insured entitled to all outstanding defense costs for defending against liabilities arising out of the *Bluestone* Action.

3. On its Count Two, find a breach of the duty to defend under the National Union Policy and/or the AGLIC Policy with respect to the *Bluestone* Action and award damages in an amount to be determined at trial.

4. On its Count Three, find a violation of the WVUTPA by National Union and an award of all general and consequential damages, including but not limited to its costs and attorneys' fees incurred in bringing this action, until and including rendition of judgment.

5. On its Count Three, find a violation of the WVUTPA by AGLIC and an award of all general and consequential damages, including but not limited to its costs and attorneys' fees incurred in bringing this action, until and including rendition of judgment.

6. On its Count Three, issue and aware of punitive damages in an amount appropriate to punish or make an example of National Union, in an amount to be determined at trial.

7. On its Count Three, issue and aware of punitive damages in an amount appropriate to punish or make an example of AGLIC, in an amount to be determined at trial.

8. On all of its Counts, pre-judgment interest, post-verdict and post-judgment interest, the fees and costs of bringing this action until and including the rendition of judgment, and all other just and equitable relief.

## REQUEST FOR JURY TRIAL

Mission Coal requests trial by jury on all issues, claims, and defenses to the fullest extent permitted by law.

Respectfully Submitted

MISSION COAL WIND DOWN CO., LLC

By: /s/ Barbara J. Keefer
Brent K. Kesner (WVSB #2022)
Barbara J. Keefer (WVSB #1979)
Kesner & Kesner, PLLC
P.O. Box 2587
Charleston, WV 25329
Attorneys for Plaintiff