**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT CHARLESTON**

MISSION COAL WIND DOWN CO., LLC,     )
          )
       Plaintiff,     )
          )     **Civil Action No.:** 2:20-cv-00302
       v.     )
          )
NATIONAL UNION FIRE INSURANCE     )
COMPANY OF PITTSBURGH, PA and     )
AMERICAN GUARANTEE AND LIABILITY     )
INSURANCE COMPANY     )
          )
       Defendants.     )

**ANSWER WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF**
**DEFENDANT AMERICAN GUARANTEE AND LIABILITY**
**INSURANCE COMPANY**

     Defendant, American Guarantee and Liability Insurance Company ("AGLIC") hereby

answers plaintiff's Complaint together with affirmative defenses and counterclaims.  AGLIC

denies all allegations in the Complaint except as otherwise expressly stated herein.  To the extent

that AGLIC may use terms defined in the Complaint or headings utilized in that pleading in this

Answer, such use is not an admission of any characterization plaintiff may seek to associate with

any such defined term or heading.

1.     Admitted in part; denied in part.  AGLIC admits only that Mission Coal Wind Down Co.,

     LLC ("Mission Coal") commenced this action against AGLIC and National Union Fire

     Insurance Company Of Pittsburgh, PA ("National Union"), and otherwise denies the

     allegations of the corresponding paragraph.

2.     Admitted in part; denied in part.  AGLIC admits that this action encompasses a

     justiciable case and controversy as more fully described in its Counterclaims, which are

incorporated herein by reference, arising out of a certain underlying litigation styled *Bluestone Coal Corp., et al. v. Pinnacle Mining Co. et al.*, U.S.D.C. S.D. WV No. 2:16-CV-06098 (the "Bluestone Litigation") which, in turn, addressed claims for underground resource damages caused by the alleged flooding, in March of 2015, of a mine located in Wyoming County, West Virginia, avers that Mission Coal was neither a "defendant" nor faced any "liability" in the Bluestone Litigation, and otherwise denies the allegations of the corresponding paragraph.

3.    Specifically denies that Mission Coal is entitled to any relief on the purported causes or claims advanced in the complaint, and otherwise denies the allegations of the corresponding paragraph.

4.    Admitted in part; denied in part.  Admits only that Mission Coal's complaint purportedly seeks a declaration of rights and obligations under certain insuring agreements issued by the defendants, denies that Mission Coal is entitled to any relief on the purported causes or claims advanced in the complaint, and otherwise denies the allegations of the corresponding paragraph.

## AS TO THE PARTIES

5.    Denies the allegations of the corresponding paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

6.    Admits, upon information and belief, that National Union is an insurance company which conducts insurance business in various states including Pennsylvania and West Virginia, and otherwise denies the allegations of the corresponding paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

7.      Admits that AGLIC is a New York corporation engaged in the insurance business with its principal place of business located at 1299 Zurich Way, Schaumburg, IL 60196, and that AGLIC is authorized to transact business and has transacted business in the Commonwealth of Pennsylvania, where the excess insurance policy placed at issue in this litigation was formed, as well as in the State of West Virginia where this action is pending.

## AS TO JURISDICTION AND VENUE

8.      The allegations in this paragraph of the Complaint are conclusions of law to which no response is required.

9.      The allegations in this paragraph of the Complaint are conclusions of law to which no response is required.

10.     The allegations in this paragraph of the Complaint are conclusions of law to which no response is required.

## AS TO ACTUAL CONTROVERSY

11.     The allegations in this paragraph of the Complaint are conclusions of law to which no response is required.

## AS TO FACTUAL BACKGROUND

12.     Admitted in part; denied in part.  Admits, upon information and belief, that Bluestone Coal Corporation ("Bluestone") is the mineral owner of coal mining rights for Double-Bonus Mine No. 65 ("Mine No. 65"), located in Wyoming County, West Virginia, and otherwise denies the allegations of the corresponding paragraph.

13.     Admitted in part; denied in part.  Admits, upon information and belief, that Pinnacle Mining Company, LLC ("Pinnacle") operates underground coal mining operations below

Bluestone's Mine No. 65 (the "Pinnacle Mine") and otherwise denies the allegations of the corresponding paragraph.

14. Admitted in part; denied in part.  Admits, upon information and belief, that Target Drilling, Inc. ("Target") performs services for the oil and gas industries including coal mining, and that Target performed certain services for Pinnacle under a Purchase Order issued by Pinnacle, in connection with Pinnacle's dewatering project for the Pinnacle Mine, and otherwise denies the allegations of the corresponding paragraph.

15. Denied.

16. Denied.

17. Admitted in part; denied in part.  Admits only that in or about May of 2013, Pinnacle secured a permit from the Mine Safety and Health Administration to construct a dewatering system for its Pinnacle Mine which entailed, *inter alia*, drilling a vertical borehole through a void (or inactive) sealed-off portion of Mine No. 65, and otherwise denies the allegations of the corresponding paragraph.

18. Admitted in part; denied in part.  Admits only that on April 16, 2013, Pinnacle issued a Purchase Order to Target to complete certain drilling operations in connection with Pinnacle's dewatering project, a true and correct copy of which, referred to herein as the "Pinnacle/Target Purchase Order" is attached as **Exhibit "A"**, and that Bluestone alleged in the underlying Bluestone Litigation that those drilling operations penetrated through one or more aquifers, and otherwise denies the allegations of the corresponding paragraph.

19. Admitted in part; denied in part.  Admits only that Bluestone alleged in the underlying Bluestone Litigation that in March of 2015 portions of Mine No. 65 flooded causing loss

of underground resources within that mine, and otherwise denies the allegations of the corresponding paragraph.

20.  Denied.

21.  Admitted in part, denied in part.  Admits only that on July 7, 2016, Bluestone and Double Bonus Mining Company filed a complaint against Pinnacle and Target styled *Bluestone Coal Corp., et al. v. Pinnacle Mining Co., et al.*, U.S.D.C. S.D. WV No. 2:16-CV-06098 (referred to herein as the "Bluestone Litigation"), which was subsequently amended to name several other entities as defendants including Cliffs Natural Resources, Inc., Seneca Coal Resources, LLC, and Seneca North American Coal, LLC, refers to the Amended Complaint filing in the Bluestone Litigation, a true and correct copy of which is attached as **Exhibit "B"**, for a fair and accurate summary of the allegations set forth in that pleading, denies Mission Coal's purported summary or characterization of the same to the extent inconsistent with the writing itself, and otherwise denies the allegations of the corresponding paragraph.

22.  Denied.

23.  Admitted in part, denied in part.  Admits only that on or about October 14, 2018 Mission Coal Company, LLC, Seneca Coal Resources, LLC, Seneca North American Coal, LLC, and Pinnacle filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Alabama, Southern Division styled *In re: Mission Coal Company, LLC, et al*., U.S.B.C., N.D. AL (S. Div.) No. 18-04177-TOM11, refers to the various filings, plans, and orders entered in those proceedings for a fair and accurate identification of the "debtor in

possession" and plan administrator, and otherwise denies the allegations of the corresponding paragraph.

24.     Admitted in part, denied in part.  Admits only that Pinnacle is a Named Insured under a series of primary, umbrella, excess, and high excess commercial liability policies issued by, *inter alia*, National Union and ACE Property & Casualty Insurance Company ("ACE") to Cliffs Natural Resources, Inc. ("Cliffs"), Pinnacle's corporate parent at the time of Pinnacle's dewatering project and the alleged consequential flooding of Mine No. 65 in March of 2015, refers to those policies identified as National Union Policy No. GL1903141 ("National Union/Pinnacle Primary CGL Policy"), appended hereto at **Exhibit "C"**, and ACE Policy No. G27410042 ("ACE/Pinnacle Umbrella Policy"), appended hereto at **Exhibit "D"**, for a fair and accurate summary of the terms of those insuring agreements, denies Mission Coal's purported summary or characterization of those policies to the extent inconsistent with the writings themselves, and otherwise denies the allegations of the corresponding paragraph.

25.     Admitted in part, denied in part.  Admits only Target is the Named Insured under two successive primary commercial general liability insurance policies issued by Arch Insurance Company ("Arch") at Policy No. EPO0057029-00, effective June 1, 2014 to June 1, 2015 ("Arch/Target 2014 Primary CGL Policy") and Arch Insurance Company at Policy No. EPO0057029-01, effective June 1, 2015 to June 1, 2016 ("Arch/Target 2015 Primary CGL Policy"), true and correct copies of which are attached hereto as **Exhibit "E"** and **Exhibit "F"**, respectively, and collectively referred to herein as the "Arch/Target Primary CGL Policies", denies that the Arch/Target Primary CGL Policies exhausted at any time relevant to the matters complained of herein, admits that Target is

the Named Insured under an Umbrella Liability Policy issued by AGLIC at Policy No.
AUC9266096-04 ("AGLIC/Target XS Policy"), effective June 1, 2014 to June 1, 2015,
which, subject to the terms and conditions of the policy, "follows the form" of the
scheduled underlying primary Arch/Target 2014 Primary CGL Policy, and is excess of
both Arch/Target Primary CGL Policies, refers to the AGLIC/Target XS Policy, a true
and correct copy of which is appended hereto at **Exhibit "G"**, for a fair and accurate
summary of the terms of that insuring agreement, specifically denies Mission Coal's
purported summary or characterization of the AGLIC/Target XS Policy to the extent
inconsistent with the terms, limitations, conditions precedent and exclusions to coverage
of that policy, specifically denies that "Mission Coal" or "Seneca" (as those entities are
defined in the Complaint) qualify as "additional insureds" under the AGLIC/Target XS
Policy, specifically denies that "Mission Coal" or "Seneca" were entitled to coverage
under the AGLIC/Target XS Policy relative to any claims asserted in the Bluestone
Litigation, and otherwise denies the allegations of the corresponding paragraph as stated.

26.     Neither admits nor denies the allegations of the corresponding paragraph concerning
National Union insofar as the same are not directed to AGLIC, and for lack of knowledge
or information sufficient to form a belief as to their truth.

27.     Denied.

## AS TO COUNT ONE

28.     AGLIC incorporates by reference the admissions, denials, and averments set forth in each
of the preceding paragraphs as if the same were set forth more fully herein at length.

29. Neither admits nor denies the allegations of the corresponding paragraph concerning National Union insofar as the same are not directed to AGLIC, and to the extent the same constitute conclusions of law to which no response is required.

30. Denied.

31. Neither admits nor denies the allegations of the corresponding paragraph concerning National Union insofar as the same are not directed to AGLIC, and to the extent the same constitute conclusions of law to which no response is required.

32. Denied.

33. Neither admits nor denies the allegations of the corresponding paragraph concerning National Union insofar as the same are not directed to AGLIC, and to the extent the same constitute conclusions of law to which no response is required.

34. Denied.

35. Neither admits nor denies the allegations of the corresponding paragraph concerning National Union insofar as the same are not directed to AGLIC, and to the extent the same constitute conclusions of law to which no response is required.

36. Denied.

37. Neither admits nor denies the allegations of the corresponding paragraph concerning National Union insofar as the same are not directed to AGLIC, and for lack of knowledge or information sufficient to form a belief as to their truth.

38. Admits that AGLIC specifically denies that Mission Coal is entitled to any relief on the purported causes or claims advanced in the complaint, and disputes Mission Coal's contentions as more fully set forth in this Answer, Affirmative Defenses and Counterclaims.

39.    The allegations in this paragraph of the Complaint are conclusions of law to which no response is required.

## **AS TO COUNT TWO**

40.    AGLIC incorporates by reference the admissions, denials, and averments set forth in each of the preceding paragraphs as if the same were set forth more fully herein at length.

41.    Neither admits nor denies the allegations of the corresponding paragraph concerning National Union insofar as the same are not directed to AGLIC, and to the extent the same constitute conclusions of law to which no response is required.

42.    Denied.

43.    Neither admits nor denies the allegations of the corresponding paragraph concerning National Union insofar as the same are not directed to AGLIC, and to the extent the same constitute conclusions of law to which no response is required.

44.    Denied.

45.    Neither admits nor denies the allegations of the corresponding paragraph concerning National Union insofar as the same are not directed to AGLIC, and to the extent the same constitute conclusions of law to which no response is required.

46.    Denied.

47.    Neither admits nor denies the allegations of the corresponding paragraph concerning National Union insofar as the same are not directed to AGLIC, and for lack of knowledge or information sufficient to form a belief as to their truth.

48.    Denied.

49.  Neither admits nor denies the allegations of the corresponding paragraph concerning National Union insofar as the same are not directed to AGLIC, and for lack of knowledge or information sufficient to form a belief as to their truth.

50.  Denied.

51.  Neither admits nor denies the allegations of the corresponding paragraph concerning National Union insofar as the same are not directed to AGLIC, and to the extent the same constitute conclusions of law to which no response is required.

52.  Denied.

53.  Neither admits nor denies the allegations of the corresponding paragraph concerning National Union insofar as the same are not directed to AGLIC, and to the extent the same constitute conclusions of law to which no response is required.

54.  Denied.

55.  Neither admits nor denies the allegations of the corresponding paragraph concerning National Union insofar as the same are not directed to AGLIC, and to the extent the same constitute conclusions of law to which no response is required.

56.  Denied.

57.  Neither admits nor denies the allegations of the corresponding paragraph concerning National Union insofar as the same are not directed to AGLIC, and to the extent the same constitute conclusions of law to which no response is required.

58.  Denied.

59.  Neither admits nor denies the allegations of the corresponding paragraph concerning National Union insofar as the same are not directed to AGLIC, and to the extent the same constitute conclusions of law to which no response is required.

60.    Denied.

## AS TO COUNT THREE

61.    AGLIC incorporates by reference the admissions, denials, and averments set forth in each of the preceding paragraphs as if the same were set forth more fully herein at length.

62.    Neither admits nor denies the allegations of the corresponding paragraph concerning National Union insofar as the same are not directed to AGLIC, and to the extent the same constitute conclusions of law to which no response is required.

63.    Neither admits nor denies the allegations of the corresponding paragraph concerning National Union insofar as the same are not directed to AGLIC, and to the extent the same constitute conclusions of law to which no response is required.

64.    Neither admits nor denies the allegations of the corresponding paragraph concerning National Union insofar as the same are not directed to AGLIC, and to the extent the same constitute conclusions of law to which no response is required.

65.    Neither admits nor denies the allegations of the corresponding paragraph concerning National Union insofar as the same are not directed to AGLIC, and to the extent the same constitute conclusions of law to which no response is required.

66.    Neither admits nor denies the allegations of the corresponding paragraph concerning National Union insofar as the same are not directed to AGLIC, and to the extent the same constitute conclusions of law to which no response is required.

67.    Denied.

68.    Denied.

69.    Denied.

70.    Denied.

71.    Denied.

**WHEREFORE**, defendant, American Guarantee and Liability Insurance Company, denies that plaintiff is entitled to any of the relief requested in the Complaint and requests judgment its favor and against plaintiff on those claims, together with a declaration that American Guarantee and Liability Insurance Company has no indemnity or other insuring obligation respecting  alleged "defense costs" incurred by or on behalf of any party in the Bluestone Litigation whose interests Mission Coal purports to represent, and such other and further relief as set forth in the Counterclaims and as may be appropriate under the circumstances, including an award of attorneys' fees and costs.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Answering defendant denies that the plaintiff is entitled to any relief requested.

## THIRD AFFIRMATIVE DEFENSE

Answering defendant denies each and every allegation of the Complaint not expressly admitted herein.

## FOURTH AFFIRMATIVE DEFENSE

The Complaint fails to state a cause of action against answering defendant.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff has failed to join necessary and indispensable parties to this action.  Consequently, the relief sought in the complaint is barred.

## SIXTH AFFIRMATIVE DEFENSE

Answering defendant raises as affirmative defenses the terms, definitions, conditions precedent, limitations, and exclusions to coverage in the AGLIC/Target XS Policy (Exh. "G") and the followed underlying Arch/Target 2014 Primary CGL Policy (Exh. "E"), which are incorporated herein by reference.

## SEVENTH AFFIRMATIVE DEFENSE

Answering defendant raises, as affirmative defenses, each and every averment set forth in answering defendant's Counterclaims, as if the same were set forth fully herein at length.

## EIGHTH AFFIRMATIVE DEFENSE

Answering defendant raises, as affirmative defenses, the terms and provisions of each and every Exhibit appended to this pleading, as if the same were set forth more fully herein at length.

## NINTH AFFIRMATIVE DEFENSE

AGLIC had no duty to defend Mission Coal or any of the persons or entities on whose behalf it seeks relief.

## TENTH AFFIRMATIVE DEFENSE

A duty to defend was not triggered and is otherwise barred in whole or in part by the express and unambiguous terms of the coverage grants, and the various exclusions, conditions, limitations, definitions, terms, and endorsements contained in the AGLIC/Target XS Policy and the Arch/Target 2014 Primary CGL Policy.

## ELEVENTH AFFIRMATIVE DEFENSE

Neither Mission Coal nor any person or entity it purports to represent in this action qualifies as an "insured" under the AGLIC/Target XS Policy.

## TWELFTH AFFIRMATIVE DEFENSE

AGLIC had no duty to defend Mission Coal, or any of the persons or entities on whose behalf it seeks relief, in the Bluestone Litigation.

## THIRTEENTH AFFIRMATIVE DEFENSE

No insuring obligation under the AGLIC/Target XS Policy ever attached relative to Mission Coal, or any of the persons or entities on whose behalf it seeks relief, because the scheduled underlying primary coverage and other primary coverage available to such persons or entities did not exhaust.

## FOURTEENTH AFFIRMATIVE DEFENSE

Coverage for Mission Coal, and any of the persons or entities on whose behalf it seeks relief, is expressly excluded under the AGLIC/Target XS Policy because the claims asserted in the Bluestone Litigation fall exclusively within the "underground resources and equipment hazard" of the policy.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are otherwise barred by its material breaches of the AGLIC/Target XS Policy.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent that any putative insured did not comply with its cooperation obligations under the AGLIC/Target XS Policy.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent that any putative insured did not comply with its notice obligations under the AGLIC/Target XS Policy.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent it seeks indemnity for or recovery of sums it is not legally obligated to pay, or which have otherwise been discharged in bankruptcy.

## NINETEENTH AFFIRMATIVE DEFENSE

No coverage is available under the AGLIC/Target XS Policy in the absence of proper and actual exhaustion of all applicable underlying policies and other insurance.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent it seeks reimbursement of defense costs or expenses which are not reasonable, necessary, or justified.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

The "defense costs" allegedly incurred by Mission Coal or whatever person or entity on whose behalf it seeks recovery, were in fact not reasonable.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

The "defense costs" allegedly incurred by Mission Coal or whatever person or entity on whose behalf it seeks recovery, were in fact not necessary or appropriate.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent that any putative insured released or otherwise compromised AGLIC's rights to recover sums it advanced in connection with the Bluestone Litigation.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims for relief may be barred by operation of the doctrines of laches, unclean hands, estoppel, *res judicata*, claims preclusion, issue preclusion, and/or waiver, and/or by application of pertinent statute(s) of limitations.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

Coverage under the AGLIC/Target XS Policy is barred or otherwise limited to the extent of any failure to provide timely and proper notice, as may be required by the AGLIC/Target XS Policy or the underlying Arch/Target 2014 Primary CGL Policy.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

Coverage under the AGLIC/Target XS Policy is barred or otherwise limited to the extent any payment or assumption of an obligation to pay or incur any cost or expense was made without the express written consent of answering defendant.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Coverage under the AGLIC/Target XS Policy may be barred, in whole or in part, or otherwise limited, by the common law, statutes, or insurance laws of the state whose law governs the interpretation, construction and/or scope of that policy or the underlying Arch/Target 2014 Primary CGL Policy.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or otherwise must be diminished, reduced, or offset by virtue of Plaintiff's release of any other putative insurer, or otherwise by application of the doctrines of release, accord and/or satisfaction.

### TWENTY-NINTH AFFIRMATIVE DEFENSE

Coverage under the AGLIC/Target XS Policy may be barred, in whole or in part, to the extent that any qualifying insured failed to mitigate, off-set, minimize or avoid any damages, costs or expenses, or failed to preserve any rights of recovery against others.

## THIRTIETH AFFIRMATIVE DEFENSE

The damages sought to be recovered by plaintiff may be barred, in whole or in part, to the extent that any of them incurred duplicate, unreasonable and inappropriate costs and expenses in connection with the defense of the Bluestone Litigation.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

Answering Defendant expressly reserves the right to assert each and every defense available under Federal Rule of Civil Procedure 12.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

Answering defendant raises as an affirmative defense each and every affirmative defense set forth in Federal Rule of Civil Procedure 8(c) but only to the extent discovery in this matter or events in the future may implicate the same.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

Answering defendant incorporates by reference all defenses or other bases for relief asserted by all other defendants in this action as if the same were set forth herein at length, and reserves the right to assert any defenses that may arise out of the course of discovery or otherwise in this litigation.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

The Complaint contains insufficient information to permit this defendant to raise all appropriate defenses and, therefore, answering defendant reserves its rights to amend and/or supplement this answer and these defenses and to assert additional defenses.

**WHEREFORE**, defendant, American Guarantee and Liability Insurance Company, having fully answered the Complaint, denies that plaintiff is entitled to any of the relief requested in the Complaint and requests judgment its favor and against plaintiff on those claims, together

with a declaration that American Guarantee and Liability Insurance Company has no indemnity

or other insuring obligation respecting  alleged "defense costs" incurred by or on behalf of any

party in the Bluestone Litigation whose interests Mission Coal purports to represent, and such

other and further relief as set forth in the Counterclaims and as may be appropriate under the

circumstances, including an award of attorneys' fees and costs.

## COUNTERCLAIMS FOR DECLARATORY AND OTHER RELIEF

American Guarantee and Liability Company, by and for its Counterclaims for

Declaratory and Other Relief against Mission Coal Wind Down Co., LLC and those entities on

whose behalf it purports to act, avers as follows:

## I.  THE PARTIES

1. Counterclaimant, American Guarantee and Liability Insurance Company("AGLIC"), is a

   New York corporation engaged in the insurance business with a statutory home office

   located at 4 World Trade Center, 150 Greenwich Street, New York, NY 10007, and its

   principal place of business located at 1299 Zurich Way, Schaumburg, IL 60196.  AGLIC

   is authorized to transact business and transacted the insurance business at issue in the

   Commonwealth of Pennsylvania and the State of West Virginia.

2. Defendant on the Counterclaim, Mission Coal Wind Down Co., LLC ("Mission Coal")

   has represented itself to be a Delaware limited liability company with its principal place

   of business at 35 West State of Franklin Road, Suite 5, PMB 281, Johnson City, TN.  See

   Mission Coal Complaint (Dkt. 1) at ¶5.

3. Mission Coal alleges that it is the "debtor in possession" for Mission Coal Company,

   LLC, which filed a Chapter 11 bankruptcy in United States Bankruptcy Court, Northern

   District of Alabama on October 14, 2018 styled *In re: Mission Coal Company, LLC, et*

*al.*, U.S.B.C., N.D. AL (S. Div.) No. 18-04177-TOM11 (the "Chapter 11 Proceedings").
<u>See</u> Mission Coal Complaint (Dkt. 1) at ¶23.

4.  Pinnacle Mining Company, LLC ("Pinnacle"), Seneca Coal Resources, LLC, and Seneca North American Coal, LLC are each identified as "debtors" in the Chapter 11 Proceedings.

5.  According to the filing by the Chief Restructuring Officer to the Debtors in the Chapter 11 Proceedings at Dkt. 21, Seneca Coal Resources, LLC acquired Seneca North American Coal, LLC and its subsidiary, Pinnacle, from Cliffs Natural Resources Inc. ("Cliffs") in December of 2015, well after the events and the losses at issue in the Bluestone Litigation occurred.

6.  According to the filing by the Chief Restructuring Officer to the Debtors in the Chapter 11 Proceedings at Dkt. 21, Mission Coal Company, LLC was not formed until January 31, 2018 through a reorganization that combined and consolidated the operations of Seneca Coal Resources, LLC and its wholly-owned subsidiaries and Seminole Coal Resources, LLC and its wholly-owned subsidiaries.

## II.  <u>JURISDICTION AND VENUE</u>

7.  This Court has original albeit not exclusive jurisdiction pursuant to 28 U.S.C. § 1334.

8.  Venue is asserted by Mission Coal to be proper in the Southern District of West Virginia under 28 U.S.C. §1391.  Compl. (Dkt. 1) at ¶10.

## III.  <u>FACTS</u>

### A.  <u>THE BLUESTONE LITIGATION</u>

9.  Pinnacle Mining Company ("Pinnacle") owns and operates a certain coal mine, referred to as the "Pinnacle Mine", in Wyoming County, West Virginia.

10. Bluestone Coal Corporation is the mineral owner of coal mining rights for Double-Bonus Mine No. 65, ("Mine No. 65"), which is situated above the Pinnacle Mine.

11. In or about May of 2013, Pinnacle secured a permit from the Mine Safety and Health Administration to construct a dewatering system for its Pinnacle Mine which entailed, *inter alia*, drilling a vertical borehole through a void (or inactive) sealed-off portion of Mine No. 65.

12. On April 16, 2013, Pinnacle issued a Purchase Order to Target Drilling, Inc. ("Target") to complete certain drilling operations in connection with Pinnacle's dewatering project, a true and correct copy of which is attached as **Exhibit "A"** and referred to as the "Pinnacle/Target Purchase Order".

13. On July 7, 2016, Bluestone Coal Corporation and Double Bonus Mining Company (collectively, "Bluestone") filed a complaint against Pinnacle and Target styled *Bluestone Coal Corp., et al. v. Pinnacle Mining Co., et al.*, U.S.D.C. S.D. WV No. 2:16-CV-06098 (the "Bluestone Litigation"), which was subsequently amended to name several other entities as defendants including Seneca Coal Resources, LLC and Seneca North American Coal, LLC (collectively "Seneca"), and Cliffs.  A true and correct copy of the Bluestone Litigation Amended Complaint (the "Bluestone Amended Complaint") is attached as **Exhibit "B".**

14. The Bluestone Litigation arose out of a March 2015 occurrence in which the Mine No. 65 was allegedly flooded with water as a consequence of Pinnacle's dewatering project.  *Id.* at ¶¶31, 32-37.

15.     It was alleged in the Bluestone Litigation that Pinnacle, Target, and others were liable to Bluestone for the underground resources damages sustained on and after the initial March 2015 flooding incident.

16.     As regards to Target, Bluestone alleged that Target's acts or omissions in connection with its drilling work under the Pinnacle/Target Purchase Order caused the initial March 2015 flooding incident.  *Id.* at ¶¶26-27; 32-37.

17.     As regards to Pinnacle, Bluestone alleged that Pinnacle was derivatively or vicariously liable for Target's acts or omissions, and that Pinnacle was independently negligent and thus liable for its own acts or omissions in connection with its de-watering project.  *Id.* at ¶¶21-38.

18.     As regards to Cliffs, Bluestone alleged that Cliffs was responsible for Pinnacle's dewatering project and the underground resource damage which occurred at the time of the flooding in March of 2015 and through December 22, 2015, when Cliffs sold Pinnacle.  *Id.* at ¶¶15-17.

19.     As regards to Seneca, Bluestone alleged that Seneca was responsible for underground resource damages which occurred after Seneca acquired Pinnacle on December 22, 2015. *Id.* at ¶¶5, 6, 18-22.

## B.  INSURANCE POLICIES

### The Pinnacle Policies

20.     Pinnacle is as a Named Insured under a series of primary, umbrella, excess, and high excess commercial liability policies issued by, *inter alia*, National Union Fire Insurance Co. of Pittsburgh, Pa. ("National Union") and ACE Property & Casualty Insurance Company ("ACE") to Cliffs, Pinnacle's corporate parent at the time of Pinnacle's

dewatering project and the alleged consequential flooding of Mine No. 65 in March of 2015. <u>See</u> National Union Policy No. GL1903141 ("National Union/Pinnacle Primary CGL Policy"), appended hereto at **Exhibit "C"**, at Declarations and Broad Form Named Insured Endorsement; ACE Policy No. G27410042 ("ACE/Pinnacle Umbrella Policy"), appended hereto at **Exhibit "D"**, at Section II, "Who Is An Insured," ¶A.2.

21.     The National Union/Pinnacle Primary CGL Policy affords Pinnacle and Cliffs a defense and indemnity from certain third party property damage liability claims with limits of $3 Million, and the ACE/Pinnacle Umbrella Policy affords Pinnacle and Cliffs a defense and indemnity following the exhaustion of the National Union/Pinnacle Primary CGL Policy with limits of $25 Million. *Ibid.*

**The Target Policies**

22.     Target is the Named Insured under two consecutive primary commercial general liability insurance policies issued by Arch Insurance Company at Policy No. EPO0057029-00, effective June 1, 2014 to June 1, 2015 ("Arch/Target 2014 Primary CGL Policy") and Arch Insurance Company at Policy No. EPO0057029-01, effective June 1, 2015 to June 1, 2016 ("Arch/Target 2015 Primary CGL Policy"). True and correct copies of the Arch/Target 2014 Primary CGL Policy and the Arch/Target 2015 Primary CGL Policy (collectively, the "Arch/Target Primary CGL Policies") are attached hereto as **Exhibit "E"** and **Exhibit "F"**, respectively.

23.     The Arch/Target Primary CGL Policies each have a limit of $1 Million per occurrence, and afford a defense and indemnity to a qualifying insured from third party property damage liability claims, inclusive of the "underground resources and equipment hazard", with defense costs outside of those indemnity limits. *Ibid.* at Commercial General

Liability Coverage Form (CG 0001 (04/13)), Section I, Insuring Agreement and Underground Resources and Equipment Coverage Endorsement.[1]

24.     The Arch/Target Primary CGL Policies each include a "Blanket Additional Insured Endorsement" which is only implicated where Target is a party to a written contract which expressly requires Target to name another as an "additional insured" and limits the coverage available to such an "insured" to liability for "property damage" caused, in whole or in part, by Target's acts or omissions.  *Ibid*. at Blanket Additional Insured Endorsement (00 GL0689 00 (06/11)).

25.     Under the terms of each of the Arch/Target Primary CGL Policies, Arch has a duty to defend a qualifying insured relative to a covered claim until such time at it has "used up the applicable limit of insurance in the payment of judgments or settlements."  *Ibid.* at Commercial General Liability Coverage Form (CG 0001 (04/13)), Section I, Insuring Agreement.

26.     Target is the Named Insured under an Umbrella Liability Policy issued by AGLIC at Policy No. AUC9266096-04 ("AGLIC/Target XS Policy"), effective June 1, 2014 to June 1, 2015, a true and correct copy of which is appended hereto at **Exhibit "G"**.

---

[1] The Arch/Target Primary CGL Policies define the "underground resources and equipment hazard" as including "property damage" to any of the following:

    a.    Oil, gas, water or other mineral substances which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water.

    b.    Any well, hole, formation, strata or area in or through which exploration for or production of any substance is carried on;

    c.    Any casing, pipe, bit, tool, pump or other drilling or well servicing machinery or equipment located beneath the surface of the earth in any such well or hole or beneath the surface of any body of water.

Arch/Target Primary CGL Policies at Underground Resources and Equipment Coverage Endorsement.

27.     The AGLIC/Target XS Policy affords excess indemnity coverage with limits of $5,000,000 which, subject to the terms and conditions of the policy, "follows the form" of the scheduled underlying primary Arch/Target 2014 Primary CGL Policy, and is excess of both Arch/Target Primary CGL Policies.  *Id.* at Commercial Umbrella Liability Policy Coverage Form (U-UMB-103-C CW (03/10)), Section I.A., and Section III.A.1.

28.     The excess coverage afforded by the AGLIC/Target XS Policy does not include a defense obligation until after "the applicable limit of underlying insurance [the Arch/Target 2014 Primary CGL Policy] and other insurance [e.g., Arch/Target 2015 Primary CGL Policy] has been exhausted by payment of loss for which coverage is afforded under this policy." *Id.* at Commercial Umbrella Liability Policy Coverage Form (U-UMB-103-C CW (03/10)), Section III.A.1.

29.     The AGLIC/Target XS Policy expressly excludes coverage for "property damage" included in the "underground resources and equipment hazard".  *Id.* at Endorsement #9.

30.     Mission Coal did not purchase the AGLIC/Target XS Policy, is not a Named Insured or scheduled insured under the AGLIC/Target XS Policy, and never contracted with nor is it related in any capacity to the policyholder, Target.

31.     Seneca did not purchase the AGLIC/Target XS Policy, is not a Named Insured or scheduled insured under the AGLIC/Target XS Policy, and never contracted with nor is it related in any capacity to the policyholder, Target.

32.     Cliffs did not purchase the AGLIC/Target XS Policy, is not a Named Insured or scheduled insured under the AGLIC/Target XS Policy, and never contracted with nor is it related in any capacity to the policyholder, Target.

33.   Pinnacle did not purchase the AGLIC/Target XS Policy, is not a Named Insured or scheduled insured under the AGLIC/Target XS Policy, and is not related in any capacity to the policyholder, Target.

## C.   THE TARGET/PINNACLE SETTLEMENT

34.   On April 16, 2018, Bluestone agreed to a settlement with Target and Target's insurers (Arch and AGLIC) in the Bluestone Litigation pursuant to which Bluestone agreed to release:

(a)   Any and all claims against Target in the Bluestone Litigation, and

(b)   Any and all vicarious liability or derivative claims against Pinnacle and any other defendants meeting the definition of the "Buyer" under the Pinnacle/Target Purchase Order or which otherwise claimed status as putative "additional insured(s)" under Target's insurance policies (collectively, the "Pinnacle Released Defendants"), including specifically any liability for damages arising out of or caused by any act, error, or omission by Target related to the subject matter of the Bluestone Litigation,

in exchange for the payment of the total sum of $5 Million (the "Target/Pinnacle Settlement").  See Release of All Claims, and Amended Release of All Claims, collectively attached hereto at **Exhibit "H"**.

35.   On May 25, 2018, the United States District Court for the Southern District of West Virginia, Charleston Division, approved the Target Settlement.  See May 25, 2018 Order (Johnston, C.J.) in the Bluestone Litigation at Dkt. 126.

36.   The Target/Pinnacle Settlement was thereafter funded by the payment of $1 Million by Arch, representing the primary indemnity limit of the Arch/Target 2014 Primary CGL

Policy, and by payment of $4 Million by AGLIC, representing $4 Million of the $5 Million excess indemnity limit of the AGLIC/Target XS Policy.  *Id.* at Section I.A.

37.   As of May 25, 2018, all claims in the Bluestone Litigation against the Pinnacle Released Defendants for damages arising out of any act, error or omission by Target, inclusive of any derivative or vicarious liability, were fully, finally, and forever settled and released.

### D.  THE PINNACLE TENDERS

38.   Under cover of April 25, 2018, nearly two (2) years after the Bluestone Litigation was filed but prior to the funding of the Target/Pinnacle Settlement, Pinnacle "tendered" its defense in the Bluestone Litigation to Arch, AGLIC, and several other insurers.  See April 25, 2018 correspondence to Arch and AGLIC, attached collectively at **Exhibit "I"**.

39.   The Pinnacle tenders identified John J. Meadows of Steptoe & Johnson PLLC in Charleston, West Virginia as currently defending Pinnacle in the Bluestone Litigation. *Id.*

40.   The tenders by Pinnacle to Arch and AGLIC were purportedly premised upon an alleged insurance requirement under the "general terms and conditions" attendant to the April 16, 2013 Pinnacle/Target Purchase Order.

41.   Pinnacle, however, has never identified or produced the "general terms and conditions" applicable to the April 16, 2013 Pinnacle/Target Purchase Order but instead relied upon a set of post-dated "Cliffs General Terms and Conditions" which came into being more than a month after that purchase order was issued; that is, on May 22, 2013.

42.   The post-dated "Cliffs General Terms and Conditions" purportedly required Target (the "Seller") to maintain "commercial general liability insurance" with a limit of $2 Million per occurrence which included Pinnacle (the "Buyer"), as an "additional insured" for

insurance coverage "limited to the liability of the additional insured only to the extent caused by the negligent acts or omissions of the Seller."  See Post-dated Cliffs General Terms and Conditions (Rev. May 22, 2013), attached at **Exhibit "J"**, ¶17.

43. Consequently, the purported tender based upon the post-dated Cliffs General Terms and Conditions sought insurance coverage for Pinnacle for claims Bluestone had already agreed to release, and which were in fact released on May 25, 2018 when the Target/Pinnacle Settlement was approved and funded.

### E. DEFENSE OF PINNACLE UNDER RESERVATION OF RIGHTS

44. In response to the Pinnacle tenders, Arch agreed to defend Pinnacle under the Arch 2015 Primary CGL Policy and pay "reasonable attorney fees and all other litigation expenses that Arch pays counsel it retains in the defense of similar claims or suits in the Charleston, West Virginia area."  See June 27, 2018 Correspondence, attached at **Exhibit "K"**.

45. Arch reserved its rights to disclaim coverage on grounds that Pinnacle had not established that Target was required under a written contract to name Pinnacle as an additional insured and that, even if it could meet that burden, Pinnacle's liability, if any, for "property damage" caused in whole or in part by Target's acts or omissions, had been released by Bluestone.  *Id.*

46. On May 9, 2018, AGLIC acknowledged the tender by Pinnacle under the AGLIC 2014 XS Policy, and requested, *inter alia*, that Pinnacle supply the documents supporting its position that Target had agreed in a written contract to name Pinnacle as an additional insured under an excess or umbrella liability policy maintained by Target, and that Pinnacle identify all primary policies affording coverage to Pinnacle for the claims

asserted in the Bluestone Litigation.  AGLIC reserved all of its rights relative to the

tender pending receipt and review of the requested information.

47.    Pinnacle did not respond to AGLIC's May 9, 2018 request for information.

48.    On June 6, 2018, AGLIC proposed to appoint Douglas LaSota of the law firm Marshall

Dennehey Warner Coleman & Goggin to defend Pinnacle, subject to a full reservation of

rights.

49.    Pinnacle accepted AGLIC's proposal, with Mr. Meadows confirming to Mr. LaSota:

Doug:

Nice to speak with you this afternoon. As we discussed, earlier today I spoke with
representatives from the client (Pinnacle Mining Company LLC) and they are
accepting your representation per the Zurich [AGLIC] coverage letters, from the
Target Drilling-related policy.

50.    Consistent with Pinnacle's request, Mr. LaSota proceeded with the defense of Pinnacle in

the Bluestone Litigation, and AGLIC immediately sought reimbursement from Arch for

the fees and costs associated with that defense, consistent with Arch's agreement to pay

those fees and costs under the Arch 2015 Primary CGL Policy.

### F.  THE SETTLEMENT OF THE REMAINING CLAIMS
### IN THE BLUESTONE LITIGATION

51.    On October 2, 2018, the Honorable Thomas E. Johnston, Chief Judge, U.S.D.C. S.D.

W.V. (Charleston Div.), convened a mandatory settlement conference in an effort to

resolve the remaining claims in the Bluestone Litigation.

52.    During the course of the settlement conference, AGLIC, for expedience sake, offered the

remaining $1 Million limit of the AGLIC/Target XS Policy toward the settlement of the

surviving claims against Pinnacle, on the condition that such an indemnity payment was

not an admission of coverage for Pinnacle under the AGLIC/Target XS Policy.

53.     During the course of the conference, and upon information and informed belief, the entities on whose behalf Mission Coal purports to represent, including Pinnacle, released Arch from all of Arch's insuring obligations under the Arch/Target Primary CGL Policies in exchange for Arch's payment of $250,000.

54.     At the time that deal was made with Arch, the entities on whose behalf Mission Coal purports to represent, including Pinnacle, had actual knowledge that if the claims for "additional insured" coverage under Target's insurance policies could be sustained, Arch, not AGLIC, would have the exclusive duty to pay defense costs incurred by any putative insured prior to the exhaustion of the Arch/Target 2014 Primary CGL Policy under the Arch/Target 2014 Primary CGL Policy and, after the exhaustion of that policy, under the Arch/Target 2015 Primary CGL Policy, as Arch previously agreed to do.

55.     The entities on whose behalf Mission Coal purports to represent, including Pinnacle, made the calculus that any putative claims for "additional insured" coverage under Target's policies was dubious, at best, and consequently were willing to release the primary insurer on the risk for defense costs incurred by or on behalf of any putative insured in the Bluestone Litigation under Target's insurance policies.

56.     The entities on whose behalf Mission Coal purports to represent, including Pinnacle, consequently released the primary insurer on the risk for defense costs incurred by or on behalf of any putative insured in the Bluestone Litigation under Target's insurance policies.

57.     Moreover, Pinnacle did not account for the fact that AGLIC owned the right to recover the defense costs and expenses AGLIC advanced under reservation of rights in connection with Mr. LaSota's defense of Pinnacle in the Bluestone Litigation.

58.    Pinnacle, to the extent it now claims it qualified as an insured under the AGLIC/Target

XS Policy, breached the material terms of the AGLIC/Target Excess Policy by releasing,

without AGLIC's consent, AGLIC's conventional, legal, and equitable subrogation rights

under the policy.

59.    On October 3, 2018, following the conclusion of the second day of the settlement

conference, Bluestone reached a settlement with Cliffs and Pinnacle to be funded as

follows:

(a)    The transfer, by Pinnacle and Seneca, of all interests in the Pocahontas
No. 4 coal seam located in Wyoming and McDowell Counties, West
Virginia to Bluestone;

(b)    The payment, by National Union, of $2.9 Million under the National
Union /Pinnacle CGL Policy;

(c)    The payment, by ACE, of $3 Million under the ACE/Pinnacle Umbrella
Policy;

(d)    The payment, by Arch, of $250,000;

(e)    The payment, by AGLIC on behalf of Pinnacle, of the $1 Million limit
remaining under the AGLIC/Target XS Policy;

(f)    The payment, by another insurer, Great Midwest Insurance Company
("Great Midwest"), of $10,000;

(g)    The payment, by Pinnacle, of $4 Million on specified future dates,
guaranteed by Seneca; and

(h)    The payment, by Cliffs, of $1 Million.

See Transcript of Settlement Conference, appended hereto at **Exhibit "L"**.

60.    Eleven days later, and without mention of it during the two-day settlement conference

before Judge Johnston, Mission Coal Company, LLC and its recently acquired

subsidiaries, Seneca and Pinnacle, filed a previously planned voluntary petition for

reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy

Court for the Northern District of Alabama, Southern Division, at No. 18-04177-TOM11,

seeking, among other things, to avoid their respective obligations under the October 3,

2018 settlement.

61.    On March 5, 2019, the Honorable Tamara O. Mitchell, U.S.B.J, granted Bluestone's

Motion for Relief from the Automatic Stay in the Chapter 11 Proceedings.  See March 5,

2019 Order (Mitchell, J) in the matter *In re: Mission Coal Company, LLC, et al.*,

U.S.B.C., N.D. AL (S. Div.) No. 18-04177-TOM11, attached as **Exhibit "M"**.

62.    Cliffs, National Union, ACE, Arch, AGLIC, and Great Midwest subsequently paid

Bluestone the amounts they had respectively agreed to pay at the conclusion of the

October 2-3, 2018 settlement conference with Judge Johnston, resolving the claims

against Cliffs and the surviving claims against Pinnacle in the Bluestone Litigation.

## IV.   THE INSTANT CASE AND CONTROVERSY

63.    Seneca, upon information and belief, retained the law firm of White & Case, and lawyers

from that firm sought admission *pro hac vice*, as counsel for Seneca in the Bluestone

Litigation on May 18, 2018.  See May 18, 2018 Statements of Visiting Attorneys and

Designation of Local Counsel, collectively attached as **Exhibit "N"**.

64.    On August 7, 2018, White & Case directed correspondence to Arch and AGLIC

requesting that they each contribute to White & Case's fees, in addition to those of Mr.

LaSota, explaining while White & Case holds "Mr. LaSota in high regard" and

"appreciates his mining background," White & Case had "deployed a team of trial

lawyers" poised to handle the case as "co-lead counsel".

65.    AGLIC declined to retain White & Case as counsel for Pinnacle in the Bluestone

Litigation.

66.     On September 10, 2018, White & Case forwarded three (3) invoices to Arch and AGLIC

        totaling $1,463,473.96 respecting legal services from April 19, 2018 through July 31,

        2018, at rates ranging from $930.00/hr. to $1,175.00/hr. for counsel.

67.     AGLIC promptly advised that it was under no duty or obligation to pay these invoices.

68.     During the course of several weeks in June and July of 2019, counsel for Mission Coal in

        the instant litigation demanded payment for sixty-nine (69) invoices (inclusive of over a

        dozen duplicates) for legal services by the Gibbons Law Firm and the White and Case

        firm totaling in excess of $4.2 Million for matters pending in the state and federal courts

        of the State of Delaware (including, by way of example, *Cleveland-Cliffs, Inc. v. Seneca*

        *Coal Resources, LLC, et al.*, Superior Court of Delaware Civil Action No. N18C-05-058

        PRW-CCLD and *Cliffs Natural Resources, Inc. v. Seneca Coal Resources, LLC, et al.*,

        U.S.D.C. D. DE No. 17-cv-00567).  Mission Coal offered no plausible basis for its

        demand for payment of these invoices.

69.     Also included in the same package were invoices for legal services rendered on behalf of

        Seneca by the Steptoe & Johnson and White & Case firms in the Bluestone Litigation and

        other litigations from January 3, 2017 through August 31, 2018 totaling in excess of $2.1

        Million.[2]

70.     At about the same time in July of 2019, counsel for Mission Coal also made demand for

        payment of over $1 Million in legal fees in unspecified matters charged by the White &

        Case firm to Seneca, which had been the subject of that law firm's unsecured claim (and

        now presumably *discharged* claim) against Seneca in the Chapter 11 Proceedings.

---

[2] This collection of so-called "original" White & Case invoices included the same three (3) invoices
previously forwarded by White & Case on September 10, 2018 which had been rebranded as if directed to
Pinnacle.

71.  AGLIC promptly advised that it was under no duty or obligation to pay these invoices.

72.  A case or controversy exists by virtue of Mission Coal's claim that AGLIC should pay "defense costs" purportedly incurred on behalf of Seneca or Pinnacle in the Bluestone Litigation.

73.  Further, a case and controversy exists as between AGLIC on the one hand, and any purported "insured" under the AGLIC/Target Excess Policy on the other hand, arising out of the latter's material breach of the AGLIC/Target Excess Policy as a result of the release of AGLIC's conventional, legal and equitable subrogation claim against Arch, and the manner, method, and amount of AGLIC's recovery of AGLIC's consequential damages resulting from that breach.

**COUNT I**
**DECLARATORY RELIEF**
**MISSION COAL, SENECA, AND PINNACLE ARE NOT INSUREDS**
**UNDER THE AGLIC/TARGET XS POLICY**

74.  AGLIC incorporates by reference the averments set forth in each of the preceding paragraphs of this Counterclaim as if the same were set forth more fully herein at length.

75.  Under prevailing Pennsylvania law, which governs the AGLIC/Target XS Policy, the burden is upon a putative insured to establish the existence of coverage under an insuring agreement.  *Erie Ins. Exch. v. Transamerica Ins. Co*., 516 Pa. 574, 580, 533 A.2d 1363, 1366 (1987) ("it is a necessary prerequisite to recovery upon a policy for the insured to show a claim within the coverage provided by the policy") (citing *Warner v. Employers' L. Assur. Corp*., 390 Pa. 62, 133 A.2d 231 (1957)).

76. In this case, Mission Coal contends that it is an "additional insured" under the AGLIC/Target XS Policy, Compl. (Dkt. #1) at ¶36, and that AGLIC failed to perform its contractual duty to defend Mission Coal in the Bluestone Litigation, *id*. at ¶54.

77. As a threshold matter, Mission Coal did not exist at the time the Bluestone Litigation was pending, and it was not named as a defendant in that action.

78. Consequently, AGLIC could not possibly have had a duty to defend Mission Coal in the Bluestone Litigation as a matter of fact and law.

79. Although not clearly articulated in its complaint, Mission Coal, as the putative "debtor in possession" in the Chapter 11 Proceedings, ostensibly contends that it possesses the rights of Seneca and Pinnacle, which it asserts were a "joint venture" relative to the operations that were the subject of the Bluestone Litigation, to recover "defense costs" unilaterally incurred in that civil action under the AGLIC/Target XS Policy.  Compl. (Dkt. #1) at ¶¶15, 16, 20.

80. Again, as a threshold matter, Mission Coal has the burden to establish that these entities it claims to represent qualify as an "insureds" under the AGLIC/Target XS Policy.  *Erie Ins. Exch. v. Transamerica Ins. Co*., *supra*.

81. Who qualifies as an "insured" is governed by the terms of the AGLIC/Target XS Policy.  *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 735 A.2d 100 (1999) (explaining that the terms of the insurance policy are the "polestar" of the inquiry concerning available insurance coverage).

82. AGLIC issued the AGLIC/Target XS Policy to Target, the "Named Insured" which is referred to as "you" or "your" under the policy.  AGLIC/Target XS Policy (Exh. "G") at

Declarations, Item 1, and Commercial Umbrella Liability Policy Coverage Form (U-UMB-103-C CW (03/10)), Introduction.

83.    The AGLIC/Target XS Policy provides follow form excess indemnity coverage (Coverage A) and umbrella liability coverage (Coverage B) under the following insuring agreement which reads:

SECTION I.  COVERAGE

A.    Coverage A - Excess Follow Form Liability Insurance

Under Coverage A, we will pay on behalf of the insured those damages covered by this insurance in excess of the total applicable limits of underlying insurance. With respect to Coverage A, this policy includes:

1.    The terms and conditions of underlying insurance to the extent such terms and conditions are not inconsistent or do not conflict with the terms and conditions referred to in Paragraph 2. below; and

2.    The terms and conditions that apply to Coverage A of this policy.

Notwithstanding anything to the contrary contained above, if underlying insurance does not apply to damages, for reasons other than exhaustion of applicable Limits of Insurance by payment of loss, then Coverage A does not apply to such damages. Also, Coverage A does not apply to any form of casualty business crisis expense insurance even if such insurance is afforded under underlying insurance or would have been afforded except for the exhaustion of the Limits of Insurance of underlying insurance.

B.    Coverage B - Umbrella Liability Insurance

Under Coverage B, we will pay on behalf of the insured those damages the insured becomes legally obligated to pay by reason of liability:

1.    Imposed by law because of bodily injury, property damage, or personal and advertising injury; or

2.    Assumed under an insured contract because of bodily injury or property damage;

covered by this insurance but only if the injury, damage or offense arises out of your business, takes place during the policy period of this policy and is caused by an occurrence happening anywhere.  We will pay such damages in excess of the

35

Retained Limit specified in Item 5. of the Declarations or the amount payable by
other insurance, whichever is greater.

Coverage B does not apply to any loss, claim or suit for which insurance is
afforded under underlying insurance or would have been afforded except for the
exhaustion of the Limits of Insurance of underlying insurance.

See AGLIC/Target XS Policy, Commercial Umbrella Liability Policy Coverage Form

(U-UMB-103-C CW (03/10)), Section I.

84.     The Coverage B - Umbrella Liability Coverage available under the AGLIC/Target XS

        Policy does not apply to Mission Coal, Seneca, Pinnacle, or their "joint venture" because

        none of those entities qualify as an insured under that coverage part.

85.     For purposes of Coverage B, an "insured" is defined as:

        Insured means:

        a.      You, if you are an organization shown in the Declarations, other than a
                partnership, joint venture or limited liability company. Your executive
                officers and directors are insureds, but only with respect to their duties as
                your executive officers or directors. Your stockholders are also insureds,
                but only with respect to their liability as stockholders;

        b.      You, if you are a partnership or joint venture shown in the Declarations.
                Your members, your partners, and their spouses or domestic partners are
                also insureds, but only with respect to the conduct of your business;

        c.      You and your spouse or domestic partner, if you are an individual shown
                in the Declarations, but only with respect to the conduct of a business of
                which you are the sole owner;

        d.      You, if you are a limited liability company shown in the Declarations.
                Your members are also insureds, but only with respect to the conduct of
                your business. Your managers are insureds, but only with respect to their
                duties as your managers;

        e.      You, if you are a trust shown in the Declarations. Your trustees are also
                insureds, but only with respect to their duties as trustees;

        f.      Your employees, but only for acts within the scope of their employment
                by you;

36

    g.     Your volunteer workers, but only while performing duties related to the conduct of your business;

    h.     Any person or organization while acting as your real estate manager; or

    i.     Your legal representative if you die, but only with respect to duties as such.

No person or organization is an insured with respect to the conduct of any current, past or newly formed partnership, limited liability company or joint venture that is not designated within the Declarations of this policy as Named Insured.

*Id.* at Section V.C.6.

86.    None of the entities Mission Coal purports to represent qualify as an insured under the Coverage B - Umbrella Liability Coverage of the AGLIC/Target XS Policy.

87.    Consequently, there is no coverage for Mission Coal or any other person or entity on whose behalf it has or may purport to assert a claim for "defense costs" under the Coverage B insuring agreement of the AGLC/Target XS Policy.

88.    The Coverage A - Excess Follow Form Liability Insurance available under the AGLIC/Target XS Policy, absent a contrary provision in the policy, is subject to the same terms and conditions of the "underlying insurance" which is the scheduled Arch/Target 2014 Primary CGL Policy.

89.    The definition of "insured" for purposes of Coverage A - Excess Follow Form Liability Insurance reads:

    B.     The following definitions are applicable to Coverage A only:
...
    2.     Insured means:

    a.     You;

    b.     Any person or organization included as an insured in underlying insurance; and

     c.    Any person or organization qualifying as an additional insured in underlying insurance but only to the same extent that such person or organization is an additional insured under such underlying insurance.

AGLIC/Target XS Policy, Commercial Umbrella Liability Policy Coverage Form (U-UMB-103-C CW (03/10)), Section V.B.2.

90.    Mission Coal, or any other person or entity on whose behalf it has or may purport to assert a claim for "defense costs", would qualify as an insured under the Coverage A - Excess Follow Form Liability Insurance of the AGLIC/Target XS Policy only if it qualifies as an insured under the "Who Is An Insured" provisions of the Arch/Target 2014 Primary CGL Policy or as an additional insured by amendment to those provisions, but then only to the extent of, and for coverage no broader than, the coverage afforded such a putative insured under the Arch/Target 2014 Primary CGL Policy.

91.    Neither Mission Coal, nor any other person or entity on whose behalf it has or may purport to assert a claim for "defense costs", qualify as an insured under the "Who Is An Insured" provisions of the Arch/Target 2014 CGL Policy.  See Arch/Target 2014 CGL Policy (Exh. "E") at Commercial General Liability Coverage form (CG 0001 (04/13)), Section II ("Who Is An Insured").

92.    The Arch/Target 2014 Primary CGL Policy includes an additional insured endorsement which reads:

BLANKET ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE FORM

SECTION II - WHO IS AN INSURED is amended to include as an additional insured those persons or organizations who are required under a written contract with you to be named as an additional insured, but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury"

caused, in whole or in part, by your acts or omissions or the acts or omissions of your subcontractors:

a.     In the performance of your ongoing operations or "your work", including "your work" that has been completed; or

b.     In connection with your premises owned by or rented to you.

All other terms and conditions of this Policy remain unchanged.

*Id.* at Endorsement 00 GL0689 00 (06/11).

93.     Mission Coal has never identified a written contract purporting to require Target to name Mission Coal as an additional insured under any Target insurance policy.  No such written contract exists.

94.     Mission Coal does not qualify as an insured under the Arch/Target 2014 Primary CGL Policy and, consequently, does not qualify as an insured under the Coverage A - Excess Follow Form Liability Insurance afforded by the AGLIC/Target XS Policy.

95.     Seneca has never identified a written contract purporting to require Target to name Seneca as an "additional insured" under any Target insurance policy.  No such written contract exists.

96.     Seneca Coal does not qualify as an insured under the Arch/Target 2014 Primary CGL Policy and, consequently, does not qualify as an insured under the Coverage A - Excess Follow Form Liability Insurance afforded by the AGLIC/Target XS Policy.

97.     Pinnacle has never identified a written contract purporting to require Target to name Pinnacle as an "additional insured" under any Target insurance policy.  No such written contract has ever been produced by Pinnacle.

98.     Pinnacle has, at times, referenced the April 16, 2013 Pinnacle/Target Purchase Order relative to the drilling services Target performed in connection with Pinnacle's de-

watering project at the Pinnacle Mine.  The April 16, 2013 Pinnacle/Target Purchase Order, however, does not include any insuring requirements.  <u>See</u> April 16, 2013 Pinnacle/Target Purchase Order (Exh. "A").

99.  Undaunted by that indisputable fact, Pinnacle has, at times, relied upon a set of post-dated "Cliffs General Terms and Conditions" which came into being more than a month after that purchase order was issued; that is, on May 22, 2013.  <u>See</u> Exh. "J".

100.  As a matter of fact and law, the post-dated "Cliffs General Terms and Conditions" are not part of any written contract between Pinnacle and Target that could implicate the condition precedent to additional insured status under the Arch/Target 2014 Primary CGL Policy.

101.  Hence, Pinnacle does not qualify as an insured under the Arch/Target 2014 Primary CGL Policy and, consequently, does not qualify as an insured under the Coverage A - Excess Follow Form Liability Insurance afforded by the AGLIC/Target XS Policy.

102.  Even assuming *arguendo* that Pinnacle could establish the existence of a written contract giving rise to additional insured status under the Arch/Target 2014 Primary CGL Policy, which it has not, coverage would not be available because Pinnacle is alleged to have been a joint venturer with Seneca relative to the operations that were the subject of the Bluestone Litigation.

103.  Mission Coal alleges that "Seneca was engaged in a joint venture with Pinnacle and others relating to Pinnacle's coal operations, including operations that were the subject of the *Bluestone* Action".  Compl. (Dkt. #1) at ¶15.[3]

---

[3] At various times in the Complaint, Mission Coal refers to Cliffs as if it was a debtor in the Chapter 11 Proceedings.  It is not.  Cliffs sold Cliffs North American Coal, LLC and its subsidiary, Pinnacle, to Seneca Coal Resources, LLC on December 22, 2015.  Thereafter, Cliffs North American Coal, LLC was renamed Seneca North America Coal, LLC.  Seneca Coal Resources, LLC, its subsidiary, Seneca North

104. The Arch/Target 2014 Primary CGL Policy expressly disavows coverage for such a joint venture:

> No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

> Arch/Target 2014 CGL Policy (Exh. "E") at Commercial General Liability Coverage form (CG 0001 (04/13)), Section II.

105. The only Named Insured shown in the declarations of the Arch/Target 2014 Primary CGL Policy is Target.

106. Neither Mission Coal nor any other person or entity on whose behalf it has or may purport to assert a claim for coverage qualifies as an insured under the AGLIC/Target XS Policy.

107. Hence, AGLIC is entitled to a declaration that it has no insuring obligation in favor of Mission Coal or any other person or entity on whose behalf Mission Coal has or may purport to assert a claim for coverage or defense costs under the AGLIC/Target XS Policy in connection with or arising out of the Bluestone Litigation, that AGLIC did not breach the AGLIC/Target XS Policy, and that AGLIC did not engage in any "bad faith" conduct or engage in any act or omission in violation of the West Virginia Unfair Trade Practices Act, W.Va. Code 33-11-1, *et seq*.

### COUNT II
#### DECLARATORY RELIEF IN THE ALTERNATIVE
#### COVERAGE IS NOT AVAILABLE TO MISSION COAL, SENECA, OR PINNACLE
#### UNDER THE AGLIC/TARGET XS POLICY

---

America Coal, LLC, and its subsidiary, Pinnacle, are the only potentially relevant debtors in the Chapter 11 Proceedings.

108.   AGLIC incorporates by reference the averments set forth in each of the preceding
       paragraphs of this Counterclaim as if the same were set forth more fully herein at length.

109.   Even assuming *arguendo* that Mission Coal or any other person or entity on whose behalf
       it has or may purport to assert a claim for "defense costs" could establish that it qualified
       as an insured under the AGLIC/Target XS Policy, which it cannot, a defense obligation
       under the AGLIC/Target XS Policy would not be implicated.

110.   Mission Coal relies exclusively on the post-dated "Cliffs General Terms and Conditions"
       which purportedly required Target (the "Seller") to maintain "commercial general
       liability insurance" with a limit of $2 Million per occurrence which included Pinnacle
       (the "Buyer") as an "additional insured" for insurance coverage "limited to the liability of
       the additional insured only to the extent caused by the negligent acts or omissions of the
       Seller."  See Post-dated Cliffs General Terms and Conditions (Exh. "J"), ¶17.

111.   Any potential additional insured coverage under the Arch/Target 2014 Primary CGL
       Policy is limited to the putative additional insured's liability for "property damage"
       caused in whole or in part by Target's acts or omissions.  See Arch/Target 2014 Primary
       CGL Policy at Blanket Additional Insured Endorsement (00 GL0689 00 (06/11)).

112.   The potential excess coverage available under the AGLIC/Target XS Policy is no broader
       than, and applies only to the same extent that, such a putative additional insured is
       covered under the Arch/Target 2014 Primary CGL Policy.  See AGLIC/Target XS
       Policy, Commercial Umbrella Liability Policy Coverage Form (U-UMB-103-C CW
       (03/10)), Section V.B.2.c.

113.   Further, any potential defense obligation under the AGLIC/Target XS Policy would not

be implicated absent the exhaustion of the scheduled underlying insurance and all other

insurance:

**SECTION III.  DEFENSE AND SUPPLEMENTARY PAYMENTS**

A.      We have the right and duty to assume control of the investigation and
settlement of any claim, or defense of any suit against the insured for damages
covered by this policy:

1.      Under **Coverage A**, when the applicable limit of underlying insurance and
other insurance has been exhausted by payment of loss for which coverage is
afforded under this policy; ...

AGLIC/Target XS Policy at Commercial Umbrella Liability Policy Coverage Form (U-

UMB-103-C CW (03/10)), Section III.

114.   Consequently, while also subject to the AGLIC/Target XS Policy's other terms,

limitations, conditions precedent and exclusions to coverage, a defense obligation is not

implicated under the AGLIC/Target XS Policy absent the exhaustion of both Arch/Target

Primary CGL Policies (i.e., the scheduled underlying Arch/Target 2014 Primary CGL

Policy and the other primary insurance coverage available under the Arch/Target 2015

Primary CGL Policy) and then, only if the claims fall within the additional insured

insuring grant which, in this instance, is limited to liability for "property damage" caused

in whole or in part by Target's acts or omissions, as otherwise constrained by the insuring

requirements in the alleged written contract.

115.   As of May 25, 2018, all claims in the Bluestone Litigation against the Pinnacle Released

Defendants[4] for damages arising out of any act, error or omission by Target, inclusive of

any derivative or vicarious liability, were fully, finally, and forever released.

---

[4] The "Pinnacle Released Defendants" include Pinnacle and any other Bluestone Litigation defendants
meeting the definition of the "Buyer" under the Pinnacle/Target Purchase Order or which otherwise

116. Prior to May 25, 2018, any defense obligation in favor of a putative insured would be the exclusive responsibility of Arch as neither of the Arch/Target Primary CGL Policies had exhausted.

117. After May 25, 2018, additional insured coverage would not be available to any of the Pinnacle Released Defendants because no claims for liability for "property damage" caused in whole or in part by Target's acts or omissions, inclusive of any vicarious or derivative liability claims, survived the Target/Pinnacle Settlement.

118. Even assuming *arguendo* that additional insured coverage survived the Target/Pinnacle Settlement, which it did not as a matter of prevailing law, any defense obligation in favor of a putative insured arising after May 25, 2018 would be the exclusive responsibility of Arch under the Arch/Target 2015 Primary CGL Policy.

119. For each of these reasons AGLIC had no duty to defend the Pinnacle Released Defendants or indemnify any defense costs incurred by or on behalf of the Pinnacle Released Defendants in the Bluestone Litigation.

120. Hence, AGLIC is entitled to a declaration that it has no insuring obligation in favor of Mission Coal or any other person or entity on whose behalf Mission Coal has or may purport to assert a claim for coverage or defense costs under the AGLIC/Target XS Policy in connection with or arising out of the Bluestone Litigation, that AGLIC did not breach the AGLIC/Target XS Policy, and that AGLIC did not engage in any "bad faith" conduct or engage in any act or omission in violation of the West Virginia Unfair Trade Practices Act, W.Va. Code 33-11-1, *et seq*.

**COUNT III**

---

claimed status as putative "additional insured(s)" under Target's insurance policies.  See Release of All Claims, and Amended Release of All Claims, collectively attached hereto at Exhibit "H".

### DECLARATORY RELIEF IN THE ALTERNATIVE
### COVERAGE FOR THE CLAIMS ADVANCED IN THE BLUESTONE LITIGATION
### IS EXPRESSLY EXCLUDED UNDER THE AGLIC/TARGET XS POLICY

121.    AGLIC incorporates by reference the averments set forth in each of the preceding

paragraphs of this Counterclaim as if the same were set forth more fully herein at length.

122.    Even assuming *arguendo* that Mission Coal could establish that Mission Coal (or any

other person or entity it purports to represent) qualified as an insured under the

AGLIC/Target XS Policy and that a defense obligation somehow attached under that

excess policy in the absence of exhaustion of the scheduled underlying and other primary

insurance, which it cannot, coverage, and hence any possible defense obligation, is

expressly excluded for the claims asserted in the Bluestone Litigation under the

AGLIC/Target XS Policy.

123.    In the Bluestone Litigation Amended Complaint, Bluestone alleges that, as a result of the

alleged flooding of Mine No. 65, it incurred various expenses to prevent or minimize

property damage within the mine, and suffered a loss or impairment of alleged

underground coal reserves and equipment within Mine No. 65:

> 35.    As a direct and proximate result of these conditions, Plaintiffs were forced
> to abandon all underground mining equipment, materials and structures
> located in the mine at the time of the commencement of the flooding and
> all of these items have been lost.  As a direct proximate result of the
> flooding, Plaintiffs' unmined and unrecovered coal reserves accessible
> through the Double-Bonus Mine No. 65 have been sterilized (permanently
> lost). Additional adjacent coal reserves that would have been accessible
> through Mine No. 65 have also been sterilized and/or impaired as a result
> of the loss of the subject mine. Further, because of the unavailability of the
> high quality metallurgical coal from the Double Bonus reserves to blend
> with metallurgical coal of lesser quality, coal production at Plaintiff
> Bluestone Coal Corporations' nearby Paycar mine cannot be processed at
> Plaintiffs' K-2 Processing plant, and therefore those coal reserves are also
> encumbered with additional production costs.

36.     As a direct and proximate result of the Defendants' negligent borehole drilling activities, Plaintiffs were forced to expend monies to respond to the water inundation emergency in the form of expended manpower, engineering resources, equipment costs, power bills, and material costs. Plaintiffs' damages were proximately caused by Defendants' borehole drilling activities. These damages, the damages associated with the efforts to save Mine No. 65 and the damages related to the subsequent loss of the Mine No. 65 continue to be calculated.  However, Plaintiffs' damages are believed to be equal to or in excess of Six Hundred Million Dollars ($600,000,000).

Bluestone Litigation Amended Complaint (Exh. "B") at ¶¶35, 36.

124.   The AGLIC/Target XS Policy does not apply to claims for "property damage" included in the "underground resources and equipment hazard":

OIL AND GAS INDUSTRIES EXCLUSION
...
THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Under Coverage A and Coverage B this policy does not apply to:

1.     Property damage included within the underground resources and equipment hazard.
2.     The cost of reducing any property included within the underground resources and equipment hazard to physical possession above the surface of the earth or of any body of water, or to the expense incurred or rendered necessary to prevent or minimize property damage to other property resulting from acts or omissions causing property damage included within the "underground resources and equipment hazard".

3.     The blowout or cratering of any oil well.

Definition

As used in this endorsement:

Underground resources and equipment hazard includes property damage to any of the following:

a.     Oil, gas, water, or other mineral substances which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water;

      b.      Any well, hole, formation, strata, or area in or through which exploration for or production of any substance is carried on; or

      c.      Any casing, pipe, bit, tool, pump, or other drilling or well servicing machinery or equipment located beneath the surface of the earth in any such well or hole or beneath the surface of any body of water.

AGLIC/Target XS Policy at Endorsement #10.

125.     To the extent the alleged damage to or loss of the mine seals, mining equipment, materials, and structures within Mine No. 65 qualify as "property damage" caused by an "occurrence", such "property damage" is within the "underground resources and equipment hazard" and is expressly excluded from coverage under the AGLIC/Target XS Policy.

126.     To the extent the alleged unmined or unrecovered (sterilized) coal reserves qualify as "property damage" caused by an "occurrence", such "property damage" falls within the "underground resources and equipment hazard" and is expressly excluded from coverage under the AGLIC/Target XS Policy.

127.     To the extent that an alleged increased production costs of mined coal from the Paycar mine may qualify as "property damage" caused by an "occurrence", such "property damage" is excluded under the AGLIC/Target XS Policy because it constitutes expenses allegedly incurred or rendered necessary to minimize "property damage" to other property (mined coal from the Paycar mine) resulting from "property damage" included within the "underground resources and equipment hazard" (the alleged sterilized "higher quality" coal in Mine No. 65).

128.     To the extent the alleged costs to respond to the claimed "water inundation emergency" qualify as "property damage" caused by an "occurrence", such "property damage" is excluded under the AGLIC/Target XS Policy because it constitutes expenses allegedly

incurred or rendered necessary to prevent or minimize "property damage" to other property included within the "underground resources and equipment hazard."

129.   All of the claims in the Bluestone Litigation fall squarely within the "underground resources and equipment hazard", for which coverage is excluded under the AGLIC/Target XS Policy.

130.   Consequently AGLIC had no duty to defend or indemnify defense costs for the Pinnacle Released Defendants in the Bluestone Litigation.

131.   Hence, AGLIC is entitled to a declaration that it has no insuring obligation in favor of Mission Coal or any other person or entity on whose behalf Mission Coal has or may purport to assert a claim for coverage or defense costs under the AGLIC/Target XS Policy in connection with or arising out of the Bluestone Litigation, that AGLIC did not breach the AGLIC/Target XS Policy, and that AGLIC did not engage in any "bad faith" conduct or engage in any act or omission in violation of the West Virginia Unfair Trade Practices Act, W.Va. Code 33-11-1, *et seq*.

**COUNT IV**
**DECLARATORY RELIEF IN THE ALTERNATIVE**
**AGLIC FULFILLED ANY PURPORTED DEFENSE OBLIGATION IN THE BLUESTONE LITIGATION**

132.   AGLIC incorporates by reference the averments set forth in each of the preceding paragraphs of this Counterclaim as if the same were set forth more fully herein at length.

133.   Even assuming *arguendo* that Mission Coal could establish that Mission Coal (or any other person or entity it purports to represent) qualified as an insured under the AGLIC/Target XS Policy and that a defense obligation, not otherwise excluded from coverage, somehow attached under that excess policy in the absence of exhaustion of the

scheduled underlying and other primary insurance, which it cannot, AGLIC fully satisfied any defense obligation owed.

134.    Under settled Pennsylvania law, an insurer has an absolute right to appoint counsel under reservation of rights.  *Babcock & Wilcox Co. v. Am. Nuclear Insurers*, 635 Pa. 1, 20, 131 A.3d 445, 456 (2015) ("[O]ur precedent allows the insurer to defend subject to a reservation of rights, which permits the insurer to control the defense from the beginning of the litigation while still alerting the insured to the potential lack of coverage.") (citing *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc*., 606 Pa. 584, 616, 2 A.3d 526, 545 (2010) (adding that upon an insurer's activation of its right to defend under reservation of rights, the insured "is obliged to cooperate with [the insurer] in defending the action.")).

135.    Pinnacle tendered its defense in the Bluestone Litigation to Arch and AGLIC on April 25, 2018.  <u>See</u> April 25, 2018 correspondence to Arch and AGLIC, attached collectively at **Exhibit "I"**.

136.    At that time, John J. Meadows of Steptoe & Johnson PLLC in Charleston, West Virginia was defending Pinnacle in the Bluestone Litigation, and presumably had been during the prior two (2) years that litigation was pending.  *Id.*

137.    As of April 25, 2018 and at all times prior thereto, any putative defense obligation in favor of Pinnacle (or any non-tendering person or entity Mission Coal purports to represent) under Target's insurance policies would have been the responsibility of the primary insurer, Arch, under the Arch/Target Primary CGL Policies.

138.    Immediately following the exhaustion, on May 25, 2018, of the first of two Arch primary policies potentially on the risk for a defense, AGLIC acknowledged the Pinnacle tender and proposed to appoint Douglas LaSota, as independent counsel, to defend Pinnacle,

subject to a reservation of rights on all of the grounds, and others, described in this Counterclaim.

139.   Pinnacle expressly accepted that proposal, with Mr. Meadows confirming to Mr. LaSota:

Doug:

Nice to speak with you this afternoon.  As we discussed, earlier today I spoke with representatives from the client (Pinnacle Mining Company LLC) and they are accepting your representation per the Zurich [AGLIC] coverage letters, from the Target Drilling-related policy.

140.   Consistent with Pinnacle's request, Mr. LaSota proceeded with the defense of Pinnacle in the Bluestone Litigation, and AGLIC immediately sought reimbursement from Arch for the fees and costs associated with that defense, consistent with Arch's agreement to pay those fees and costs under the Arch 2015 Primary CGL Policy, which remained unimpaired following the Target/Pinnacle Settlement on May 25, 2018.

141.   As a matter of settled law in the jurisdiction where Mr. LaSota discharged his professional obligations, he served as Pinnacle's independent counsel.  *Barefield v. DPIC Companies, Inc*., 600 S.E.2d 256, 268 (W. Va. 2004) ("Because a defense attorney is ethically obligated to maintain an independence of professional judgment in the defense of a client/insured, an insurance company possesses no right to control the methods or means chosen by the attorney to defend the insured.") and compare, *Ingersoll-Rand Equip. Corp. v. Transp. Ins. Co*., 963 F. Supp. 452, 454 (M.D. Pa. 1997) ("When an insurer retains an attorney to represent an insured, pursuant to the insurer's duty to defend, that attorney's client is the insured, not the insurer.").

142.   AGLIC, as a matter of law, was under no obligation to retain additional law firms to discharge any putative defense obligation.

143.  Mr. LaSota defended Pinnacle through the conclusion of the surviving claims against it in the Bluestone Litigation.

144.  At no time did Pinnacle object to Mr. LaSota's representation, or challenge his legal acumen as an AV-Rated™ attorney with an engineering degree.

145.  AGLIC paid all costs and expenses associated with Mr. LaSota's representation of Pinnacle in the Bluestone Litigation, while reserving its right to recover those defense costs from Arch.

146.  AGLIC fulfilled any purported "duty to defend" Pinnacle.

147.  Hence, AGLIC is entitled to a declaration that it has no obligation to reimburse Mission Coal (or any person or entity it purports to represent) for any "defense costs" it now claims or may claim to have incurred in the Bluestone Litigation, that AGLIC did not breach the AGLIC/Target XS Policy, and that AGLIC did not engage in any "bad faith" conduct or engage in any act or omission in violation of the West Virginia Unfair Trade Practices Act, W.Va. Code 33-11-1, *et seq*.

## COUNT V
### DECLARATORY RELIEF
### MISSION COAL RELEASED ANY CLAIMS FOR DEFENSE COSTS

148.  AGLIC incorporates by reference the averments set forth in each of the preceding paragraphs of this Counterclaim as if the same were set forth more fully herein at length.

149.  A defense obligation under the AGLIC/Target XS Policy is not implicated absent the actual exhaustion of the scheduled underlying insurance and all other insurance:

**SECTION III.  DEFENSE AND SUPPLEMENTARY PAYMENTS**

A.      We have the right and duty to assume control of the investigation and settlement of any claim, or defense of any suit against the insured for damages covered by this policy:

> 1.      Under **Coverage A**, when the applicable limit of underlying insurance and other insurance has been exhausted by payment of loss for which coverage is afforded under this policy; ...

AGLIC/Target XS Policy at Commercial Umbrella Liability Policy Coverage Form (U-UMB-103-C CW (03/10)), Section III.

150.    Prior to the May 25, 2018 Target/Pinnacle Settlement, any defense obligation in favor of a putative insured under the AGLIC/Target XS Policy would be the exclusive responsibility of Arch as neither of the Arch/Target Primary CGL Policies had exhausted.

151.    Even assuming *arguendo* that additional insured coverage, if any, survived the Target/Pinnacle Settlement, which it did not, any defense obligation in favor of a putative insured arising after May 25, 2018 would be the exclusive responsibility of Arch under the Arch/Target 2015 Primary CGL Policy.

152.    Arch, in fact, agreed to pay the defense costs incurred by or on behalf of Pinnacle under the Arch/Target 2015 Primary CGL Policy following the Target/Pinnacle Settlement.

153.    During the course of the Settlement Conference on October 2-3, 2018, the entities on whose behalf Mission Coal purports to represent, including Pinnacle, released Arch from all of Arch's insuring obligations under the Arch/Target Primary CGL Policies in exchange for Arch's payment of $250,000.

154.    At the time of that deal with Arch, the entities on whose behalf Mission Coal purports to represent, including Pinnacle, had actual knowledge that if the claims for "additional insured" coverage under Target's insurance policies could be sustained, Arch, not AGLIC, would have the exclusive duty to pay defense costs incurred by any putative insured prior to the exhaustion of the Arch/Target 2014 Primary CGL Policy under the Arch/Target 2014 Primary CGL Policy and, after the exhaustion of that policy, under the Arch/Target 2015 Primary CGL Policy.

155.    The entities on whose behalf Mission Coal purports to represent, including Pinnacle, made the calculus that any putative claims for "additional insured" coverage under Target's policies was dubious, at best, and it consequently was willing to release the primary insurer on the risk for any defense costs incurred by or on behalf of any putative insured in the Bluestone Litigation under Target's insurance policies.

156.    Consequently, by releasing the primary insurer on the risk for those "defense costs", Mission Coal cannot now seek to recover those same "defense costs" from an excess insurer.

157.    Hence, Mission Coal is barred from seeking "defense costs" under the AGLIC/Target XS Policy.

158.    AGLIC is not liable as a matter of law for any "defense costs" claimed by Mission Coal in this action.

159.    AGLIC is entitled to a declaration that it has no obligation to indemnify Mission Coal or any other person or entity it purports to represent for defense costs relative to the Bluestone Litigation under the AGLIC/Target XS Policy.

**COUNT VI**
**BREACH OF CONTRACT**
**(ALTERNATIVE RELIEF)**
**MISSION COAL UNLAWFULLY RELEASED AGLIC'S CLAIMS AGAINST ARCH**

160.    AGLIC incorporates by reference the averments set forth in each of the preceding paragraphs of this Counterclaim as if the same were set forth more fully herein at length.

161.    Mission Coal, or those it purportedly represents, released Arch from its insuring obligations, inclusive of any duty to defend or reimburse defense costs, in exchange for a payment, by Arch, of $250,000.

162.    AGLIC advanced sums on behalf of Pinnacle for its defense in the Bluestone Litigation.

163. Under the express terms of the AGLIC/Target XS Policy, if any "insured" has the right to recover sums advanced by AGLIC, those rights are transferred to AGLIC:

Transfer of Rights of Recovery Against Others to Us

a. If the insured has rights to recover all or part of any payment we have made under this insurance, those rights are transferred to us. The insured must do nothing after the loss to impair them. At our request, the insured will bring suit or transfer those rights to us and help us enforce them.

AGLIC/Target XS Policy (Exh. "G") at Commercial Umbrella Liability Policy Coverage Form (U-UMB-103-C CW (03/10)), Section VI, ¶17.

164. To the extent Pinnacle claims it qualified as an insured under the AGLIC/Target XS Policy, it had a duty to preserve, rather than impair, AGLIC's rights to recover those sums AGLIC advanced under the AGLIC/Target XS Policy.

165. By releasing Arch, Pinnacle breached its contractual obligation to preserve, rather than impair, AGLIC's rights to recover those sums AGLIC advanced under the AGLIC/Target XS Policy.

166. The aforesaid breach was material and without plausible justification.

167. As a consequence of the aforesaid breach, AGLIC's conventional, legal, and equitable subrogation claims against Arch have been extinguished.

168. All conditions precedent for the maintenance of this breach of contract claim have been satisfied or otherwise waived by Mission Coal.

169. Mission Coal is liable to AGLIC for all costs and expenses AGLIC expended in the defense of Pinnacle in the Bluestone Litigation.

170. AGLIC is entitled to recover from Mission Coal the amounts AGLIC expended in the defense of Pinnacle in the Bluestone Litigation.

171.   In the alternative, AGLIC is entitled to a set off in the amount of those sums AGLIC expended in the defense of Pinnacle in the Bluestone Litigation relative to any claim by Mission Coal in this action.

## PRAYER FOR RELIEF ON THE COUNTERCLAIMS

1.   On Counts I through IV of this Counterclaim, a Judgment declaring that American Guarantee and Liability Insurance Company has no obligation to indemnify any defense costs or other sums claimed by Mission Coal in this action;

2.   On Counts I through V of this Counterclaim, a Judgment in favor of American Guarantee and Liability Insurance Company and against Mission Coal on all claims advanced in the Complaint;

3.   On Counts I through IV of this Counterclaim, and for the reasons stated therein, a Judgment Declaring that American Guarantee and Liability Insurance Company did not breach the AGLIC/Target XS Policy;

4.   On Counts I through IV of this Counterclaim, and for the reasons stated therein, a Judgment Declaring that American Guarantee and Liability Insurance Company has not violated the West Virginia Unfair Trade Practices Act, W.Va. Code 33-11-1, *et seq.*

5.   On Counts I through IV of this Counterclaim, and for the reasons stated therein, a Judgment Declaring that American Guarantee and Liability Insurance Company did not engage in any "bad faith" conduct as may be alleged by Mission Coal in the Complaint;

6.   On Counts I through IV of this Counterclaim, and in the alternative, for the reasons stated therein, a Judgment in favor of American Guarantee and Liability Insurance Company and against Mission Coal on Count Three of the Complaint;

7.      On Count V of this Counterclaim, a Judgment declaring that American Guarantee and Liability Insurance Company has no obligation to indemnify any defense costs or any other sums claimed by Mission Coal in this action;

8.      On Count VI of this Counterclaim, and in the alternative, a Judgment in favor of American Guarantee and Liability Insurance Company and against Mission Coal for the amounts American Guarantee and Liability Insurance Company expended in the defense of Pinnacle in the Bluestone Litigation, plus pre-judgment and post-judgment interest on those sums;

9.      On all Counts of this Counterclaim, a Judgment in favor of American Guarantee and Liability Insurance Company and against Mission Coal for all fees, costs, and expenses incurred by American Guarantee and Liability Insurance Company in this action; and

10.     On all Counts of this Counterclaim, a Judgment in favor of American Guarantee and Liability Insurance Company and against Mission Coal for such other and further relief as this Honorable Court may deem just and appropriate under the circumstances.

Respectfully Submitted,

AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY,

By Counsel,

/s/ Edgar A. Poe, Jr.
Edgar Allen Poe, Jr., WV State Bar No. 2924

**PULLIN, FOWLER, FLANAGAN,
BROWN & POE, PLLC**
JamesMark Building
901 Quarrier Street
Charleston, WV 25301
Telephone: (304) 344-0100

Facsimile: (304) 342-1545

and

Louis A. Bove, Esquire
PA State Bar No. 53071
lbove@bodellbove.com
(*pro hac vice* pending)
**BODELL BOVE LLC**
1845 Walnut Street, 11th Floor
Suite 1100
Philadelphia, PA 19103
Telephone: 215-864-6600
Facsimile: 215-864-6610

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT CHARLESTON**

MISSION COAL WIND DOWN CO., LLC,          )
                                          )
      Plaintiff,                       )
                                          )    **Civil Action No.:** 2:20-cv-00302
      v.                               )
                                          )
NATIONAL UNION FIRE INSURANCE             )
COMPANY OF PITTSBURGH, PA and             )
AMERICAN GUARANTEE AND LIABILITY          )
INSURANCE COMPANY                         )
                                          )
      Defendants.                      )

## CERTFICATE OF SERVICE

The undersigned counsel for Defendant, American Guarantee and Liability Insurance Company, does hereby certify that on June 12, 2020, I electronically filed the "**ANSWER WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY**" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following, and also hereby certify that I have forwarded the referenced document by regular United States Mail, postage prepaid, to the following:

Brent K. Kesner, Esq.
Barbara J. Keefer, Esq.
KESNER & KESNER
P. O. Box 2587
Charleston, WV 25329
***Counsel for Plaintiff***

                                              */s/ Edgar Allen Poe, Jr.*
                                   Edgar Allen Poe, Jr., WVSB #2924

PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC
JamesMark Building
901 Quarrier Street
Charleston, WV  25301
Telephone:    (304) 344-0100
Facsimile:    (304) 342-1545

and

Louis A. Bove, Esquire
PA State Bar No. 53071
lbove@bodellbove.com
(*pro hac vice* pending)
**BODELL BOVE LLC**
1845 Walnut Street, 11th Floor
Suite 1100
Philadelphia, PA 19103
Telephone: 215-864-6600
Facsimile: 215-864-6610